**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JONATHAN FERRIER** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 25-2286 c/w 26-1694** |
| | * | |
| **CP MARINE SERVICES, LLC, ET AL.** | * | **SECTION: A(4)** |
| | * | |
| **REF: 25-2286** | * | **JUDGE JAY C. ZAINEY**<br>**MAG. JUDGE KAREN WELLS ROBY** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO LIMIT THE TESTIMONY OF MICHAEL McNULTY, M.D., TO THE FOUR CORNERS OF HIS REPORT UNDER FRCP 26**

**MAY IT PLEASE THE COURT:**

Plaintiff Jonathan Ferrier respectfully submits here his Memorandum in Support of his Motion *in Limine* to Limit the Testimony of Dr. Michael McNulty to the Four Corners of his Report Under FRCP 26.

## I. INTRODUCTION

Defendants retained Michael McNulty, M.D., to conduct a single-issue orthopedic examination that Dr. McNulty himself styled a "Legal Additional Medical Opinion" limited to Plaintiff Jonathan Ferrier's "right knee." His report does two things: (1) it opines that the care Mr. Ferrier received through March 31, 2026 was "appropriate" and "indicated," and (2) it opines that Mr. Ferrier's right-knee meniscus tear is not causally-related to his April 5, 2025 work injury.[1] Dr. McNulty expressly states that the March 31, 2026 visit "is the last of the records provided to" him.

The report says nothing about Mr. Ferrier's ability to work, his physical restrictions, his employability, or his disability status; nothing about the future surgeries his treating surgeon has

[1] Exhibit 1 - Rule 26 Expert Report of Dr. McNulty, p. 4.

recommended; and nothing responding to the disability and work-restriction opinions of his treating pain-management physician. Those subjects lie outside the four corners of the report.

The relief Plaintiff seeks is neither novel nor extraordinary. Rule 26(a)(2)(B)(i) requires a retained expert's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them," and courts in this district, including this Court, accordingly limit an expert's testimony to the four corners of his report. In *Pappas v. Liberty Mutual Fire Insurance Co.*, Your Honor held that a retained expert would not be allowed "to testify beyond the four corners of his expert report," and rejected the notion that a report's omissions could be cured at the expert's deposition. No. 2:23-cv-00070 at *4 (E.D. La. May 2, 2024) (Zainey, J.) [ECF No. 72]. Plaintiff asks the Court to apply that same rule here and, in particular, to bar defendant from converting Dr. McNulty's silence on work restrictions into an affirmative opinion that Mr. Ferrier can work or is not disabled—the very maneuver that would work the unfair surprise Rule 26 exists to prevent.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The injury and course of treatment.*

On April 5, 2025, while working as a Jones Act seaman aboard the M/V DOUGLAS, Mr. Ferrier's leg was caught in a mooring line and crushed, causing a displaced right tibia/fibula fracture. He underwent external-fixator placement and later definitive open reduction and internal fixation (ORIF) by his treating orthopedic surgeon, followed by physical therapy.

For the Court's benefit, here are the images of Jonathan Ferrier's leg post-incident and post-ORIF surgery:




*Imaging and colorization of Mr. Ferrier's leg post incident.*




*Imaging and colorization of Mr. Ferrier's leg post-ORIF surgery (current state).*

He continues to have hardware and more than twenty screws in his lower leg, ankle impingement from the hardware, and—as later imaging confirmed—a right-knee meniscus tear with accompanying microfractures in his knee.[2] Mr. Ferrier's treating orthopedic surgeon, Dr. Neil Duplantier, has recommended meniscus surgery and hardware-removal surgery.[3] Mr. Ferrier's treating pain-management physician, Dr. Eric Lonseth, has opined that he is permanently disabled and cannot meet the physical requirements of marine employment; ***those restrictions exist independent of the torn meniscus***.[4]

**B. *Dr. McNulty's report and its limits.***

Defendant retained Dr. McNulty, who examined Mr. Ferrier and prepared a report bearing a typed date of May 20, 2026. Dr. McNulty did not transmit that report to defense counsel–and defense counsel did not produce it to Plaintiff, until July 31, 2026. (Defense counsel has confirmed that he received the report from Dr. McNulty on July 31, 2026, and produced it to Plaintiff the same day.)[5] Whichever date controls, Dr. McNulty reviewed no record dated after March 31, 2026, and is expressly limited to an evaluation of Mr. Ferrier's "right knee."[6]

Within the four corners of that report, Dr. McNulty discloses the following opinions, and only the following opinions: (1) that Mr. Ferrier sustained a right tibia/fibula fracture in the work incident, and that all care rendered to date was "appropriate" and "indicated"; (2) that Mr. Ferrier's right-knee meniscus tear is not causally related to the April 6, 2025 incident; and (3) that, "[b]arring surgery," Mr. Ferrier is at maximum medical improvement, which he reached approximately one year after the incident.[7]

---

[2] Exhibit 2 - MRI of the right knee.
[3] Exhibit 3 - Surgical Recommendations of Dr. Neil Duplantier.
[4] Exhibit 4- Return to Work Restrictions of Dr. Eric Lonseth.
[5] Exhibit 5 - July 31, 2026 - Email from Paul Hale.
[6] Exhibit 1 - Rule 26 Expert Report of Dr. McNulty, p. 1.
[7] Exhibit 1 - Rule 26 Expert Report of Dr. McNulty, p. 4.

By his own admission, Dr. McNulty reviewed no record dated after March 31, 2026.[8] His report therefore does not account for, and does not mention, any surgical recommendation, disability opinion, work-restriction opinion, treatment, or imaging postdating that review. And the report offers no opinion of Dr. McNulty's own on (1) Mr. Ferrier's present or future ability to work, his work capacity, restrictions, employability, or disability status; (2) the necessity, reasonableness, appropriateness, or causation of any recommended future surgery, including meniscus surgery and hardware removal; or (3) whether the opinions of Drs. Duplantier and Lonseth are correct. None of these subjects is addressed anywhere in the report.

## III. LEGAL STANDARD

### A. *Rule 26(a)(2)(B) requires a complete statement of all opinions.*

A retained expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," together with the facts or data the witness considered. Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). The requirement exists to eliminate unfair surprise and to give the opposing party a fair opportunity to evaluate the opinions the expert intends to offer.

### B. *In this district, expert testimony is limited to the four corners of the report.*

This Court applies that rule directly. In *Pappas v. Liberty Mut. Fire Ins. Co.*, Your Honor held that a retained expert could not testify beyond the four corners of his expert report and that he was not allowed to expound upon or explain his conclusions at trial beyond what he included in his report. *Pappas*, No. 2:23-cv-00070, [ECF No. 72] at *4 (E.D. La. May 2, 2024) (Zainey, J.) ("Kotter is a retained expert who was required to produce a report—which he did. As an expert in this case, the Court will not allow Kotter to testify beyond the four corners of his expert

[8] Exhibit 1 - Rule 26 Expert Report of Dr. McNulty, p. 3.

report. Liberty is not required to depose Kotter in order to flesh out his opinions, which is something that should have been done in his report. And Kotter will not be allowed to expound upon or explain his conclusions at trial beyond what he included in his report.") The rule is settled throughout this district. *See Magee v. Fla. Marine, LLC*, No. 22-3835, [ECF 219 at *10] (E.D. La. July 18, 2024) (Papillion, J.); *accord Beary v. Deese*, No. 16-15757, [ECF 111 at * 5] (E.D. La. July 17, 2018)(Zainey, J.); *Borel v. Gulf Offshore Logistics, LLC*, No. 18-8188, [ECF 38 at *3] (E.D. La. July 24, 2019); *Smith-Jordan v. Love*, No. [ECF 136 at *18], (E.D. La. Jan. 26, 2022). The rule serves to prevent unfair surprise with respect to the expert's testimony.

**C. *Rule 702 and Daubert place the burden of admissibility on the proponent.***

Independently, Federal Rule of Evidence 702 admits expert testimony only if "the proponent demonstrates to the court that it is more likely than not" that the testimony rests on sufficient facts, is the product of reliable principles and methods, and reflects their reliable application to the facts. The trial court is the gatekeeper. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). An opinion never disclosed—with no stated basis, reasons, or methodology—cannot satisfy that burden, because there is nothing for the Court to evaluate.

## IV. ARGUMENT

***A. Dr. McNulty must be confined to the four corners of his report.***

This Court has already applied the controlling rule. In *Pappas*, the Court forbade an expert from "testify[ing] beyond the four corners of his expert report," and further held that he would "not be allowed to expound upon or explain his conclusions at trial beyond what he included in his report." *Pappas,* No. 2:23-cv-00070, [ECF No. 72] at *4 (E.D. La. May 2, 2024) (Zainey, J.). The same rule prevailed in *Magee v. Florida Marine, LLC*, a Jones Act case with

facts materially similar to these: defendants' retained medical experts' reports did not address the plaintiff's ability to return to work or the restrictions that would apply to him, yet defendants sought to elicit such opinions at trial. No. 22-3835, [ECF 219 at *10]. Rejecting the defense's prematurity and contrary-to-law arguments, the court ordered the experts' testimony "limited to the four corners of their expert reports." Mr. Ferrier submits that the same rule and the same result apply here: Dr. McNulty disclosed two opinions–the appropriateness of past care and the non-causation of the meniscus tear–and he should be held to them consistent with this Court's even-handed approach in *Pappas*.

***B. The specific opinions plaintiff seeks to exclude appear nowhere in the report.***

Four categories of opinion Defendants may attempt to elicit are absent from the four corners of Dr. McNulty's report.

***1. Work capacity, restrictions, employability, and disability.*** Nowhere does Dr. McNulty opine on whether Mr. Ferrier can return to work, what restrictions apply to him, whether he is employable, or whether he is disabled. These questions go to the core of a Jones Act plaintiff's claim for lost wages and lost earning capacity, and they are hotly contested. Dr. McNulty may not opine on them for the first time at deposition or trial.

***2. The recommended future surgeries.*** The report references "hardware removal" only as an entry in the treating records; it does not opine that the meniscus surgery or hardware-removal surgery recommended for Mr. Ferrier is (or is not) necessary, reasonable, appropriate, or causally related to the incident. Dr. McNulty should be precluded from any such undisclosed opinion. The only opinion Dr. McNulty included in his report regarding Ferrier's

prior treatment was that the care Ferrier had received through March 31, 2026 was "appropriate" and "indicated."[9]

***3. The treating physicians' opinions.*** Because his review of the medical records ended with treatment through March 31, 2026, Dr. McNulty offers no opinion rebutting Dr. Duplantier's surgical recommendations or Dr. Lonseth's disability and work-restriction opinions. He may not offer newly minted criticisms of opinions he expressly has not reviewed and never addressed in his report.[10]

***C. Defendant may not convert Dr. McNulty's silence into an affirmative opinion that Plaintiff can work or is not disabled.***

A particular risk in this case warrants a specific ruling. Dr. McNulty's report recites at length that Mr. Ferrier was "cleared for full/unrestricted work,"[11] worked "without any recorded difficulties," and "denied any knee symptoms" at an alleged September 30, 2025 physical. Dr. McNulty offers those statements as part of the basis for his disclosed causation opinion. He does not, however, offer any opinion that Mr. Ferrier is presently able to work, is free of restrictions, or is not disabled—issues that bear directly on Mr. Ferrier's claim for lost earning capacity.

Defendants should not be permitted to bridge that gap by treating the report's silence as an affirmative opinion. This Court confronted the identical tactic in *Magee*. There, defense counsel attempted to elicit from a retained physician–through the absence of any restriction in his report–an affirmative opinion that the plaintiff had no work restrictions; the undersigned in that

[9] Exhibit 1 - Rule 26 Expert Report of Dr. McNulty, p. 4.

[10] This is where the timing of the report's transmission becomes relevant. While the evaluation of Mr. Ferrier took place in May 2026, defense counsel confirmed that he received the report for Dr. McNulty on July 31, 2026. By that time, Dr. McNulty could have been provided with and considered the surgical recommendations and work restrictions of Ferrier's treating physicians.

[11] The reference to work clearance is solely based on the August 4, 2025 Return to Work Note from Dr. Wax. Dr. McNulty's comment ignores that Dr. Wax, that same day, qualified that release by saying that he was released to work "as tolerated." See Exhibit 6- August 4, 2025 Return to Work note and Office Note from Dr. Wax.

case objected on behalf of the plaintiff under the four-corners rule, consistent with the Court's order. As the plaintiff explained, permitting an expert to give affirmative opinion testimony about something omitted from his report would lead to absurd results: if non-restriction were truly the expert's opinion, Rule 26 required him to disclose it so that it could be tested and rebutted. The court agreed and further clarified in advance of trial that the absence of opinions cannot be used as an affirmative opinion while ruling on deposition designations. Here is the relevant excerpt from the court's ruling:

Case 2:22-cv-03835-DJP-MBN Document 240 Filed 07/28/24 Page 15 of 15

| **Dr. David Kaplan, Deposition of July 17, 2024** | | | | |
|---|---|---|---|---|
| **Objected-To Page and Line Designations** | **Sustained** | **Overruled** | **Other** | **Notes** |
| 20:7-19 | X | | | The Court does not believe Dr. Kaplan's testimony regarding a lack of physical restrictions (or work restrictions) is a reasonable extension of his report. The Court will not allow Florida Marine to use this witness to provide affirmative opinion testimony about an opinion that is not contained in his report. All testimony from Dr. Kaplan and colloquy between counsel on this point should be removed from the final transcript to be admitted at trial. |
| 21:11-22 | X | | | |
| 22:7-21 | X | | | |
| 24:1-8 | X | | | |

*Magee*, No. 22-03835, [ECF 240 at *15].

The same logic controls here. Dr. McNulty may testify to the historical facts he actually relied upon as the basis for his disclosed causation opinion, but he may not offer—directly, or by inference from the report's silence—any undisclosed opinion that Mr. Ferrier can work, has no restrictions, or is not disabled.

***D. Any "minor and logical extension" argument fails, because the expected opinions would be new opinions, not extensions.***

Defendant may respond, as defendants often do, that an expert should be permitted "minor and logical extensions" of the opinions in his report and that it is unrealistic to reduce

every detail to writing. That doctrine does not save the opinions at issue. By its own terms, it reaches only reasonable elaborations of opinions already expressed, not opinions on subjects the report never addressed. An opinion that Mr. Ferrier can or cannot return to work, that his recommended surgeries are unnecessary or unrelated, or that Dr. Lonseth's disability findings are wrong, is not a minor extension of an opinion that past care was appropriate or whether the meniscus tear is causally related to the incident. These are different opinions, to different questions, resting on bases that were never disclosed.

***E. Rule 26(e) supplementation is not a vehicle for new opinions.***

Nor may defendants reserve a right to inject new opinions later under the guise of "supplementation." Compliance with Rule 26 "is not merely aspirational;" it exists to let both sides prepare and to prevent surprise. The duty to supplement under Rule 26(e) is not a license to shore up a deficient or problematic expert report. *Simmons v. Johnson*, No. 06-325, 2008 WL 474203 (M.D. La. Feb. 20, 2008). It permits supplementation only to correct inaccuracies or to add information that was not available when the initial report was prepared. *Brucker v. Lowe's Home Ctrs., Inc.*, 2012 WL 2225818, at *2 (M.D. Fla. June 15, 2012) (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

Here, there is no new, previously unavailable information to supplement. The report reviewed no record after March 31, 2026, yet it was not produced until July 31, 2026–four months later. Whatever Dr. McNulty might now say about Mr. Ferrier's work capacity, the recommended future surgeries, or the treating physicians' opinions was available to be reviewed, addressed, and disclosed before the report was served. Any belated attempt to expand his opinions would be improper.

***F. The motion is not premature.***

Any argument that the motion is premature because Dr. McNulty has not yet been deposed fails under this Court's own precedent. In *Pappas*, the Court rejected the "erroneous assumption that the deficiencies in [the expert's] narrative can simply be handled during his deposition," and held that a party "is not required to depose [the expert] in order to flesh out his opinions, which is something that should have been done in his report." The defense in *Magee* likewise argued prematurity because its experts had not been deposed and might still supplement; the court disagreed and granted the plaintiff's motion to limit. The purpose of the four-corners rule–to prevent surprise and fix the scope of expert testimony before trial–is best served by a ruling now, not after an undisclosed opinion has already reached the factfinder.

***G. Rule 37(c)(1) and Rule 702 independently support the requested limitation.***

The same result follows under Rule 37(c)(1), which makes exclusion of opinions not disclosed under Rule 26(a) automatic unless the omission was substantially justified or harmless. Defendants have no justification for omitting opinions on subjects that were known and available well before the report was produced on July 31, 2026; the opinions bear on core damages issues, which heightens rather than excuses the need for timely disclosure; their late appearance would prejudice Mr. Ferrier, and a continuance on the eve of trial would only reward the omission. Independently, because Rule 702 places on the defendants the burden of demonstrating admissibility by a preponderance of the evidence, and because an undisclosed opinion supplies no basis or methodology for the Court to evaluate, defendants cannot carry that burden as to any opinion outside the report.

## V. CONCLUSION

For the foregoing reasons, plaintiff Jonathan Ferrier respectfully requests that the Court grant this motion and enter an Order limiting the deposition and trial testimony of Michael McNulty, M.D., to the opinions disclosed within the four corners of his Rule 26 report, and precluding Dr. McNulty from offering any opinion not disclosed therein, including: any opinion concerning Ferrier's ability to work, his restrictions, employability, or disability; the necessity, reasonableness, appropriateness, or causation of any recommended future surgery; the opinions of Drs. Duplantier and Lonseth that he did not address; or any record or event postdating March 31, 2026. Ferrier further asks that this Honorable Court, preclude Defendants from using the absence of any such opinion in the report as affirmative opinion testimony that Ferrier can work, is free of restrictions, or is not disabled.

Respectfully submitted,

**ADAM DAVIS LAW FIRM**

BY: */s/ Taylor M. Bologna*________
Adam Neely Davis (Bar No. 35740)
Taylor M. Bologna (Bar No. 37594)
Michelle Paré Ricca (Bar No. 41385)
22398 Hwy. 435
Abita Springs, Louisiana 70420
Telephone: (504) 553-1435
Facsimile: (504) 553-1439
ad@adamdavislawfirm.com
taylor@adamdavislawfirm.com
michelle@adamdavislawfirm.com
**ATTORNEYS FOR JONATHAN FERRIER**