**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN FERRIER**<br><br>**v.**<br><br>**CP MARINE SERVICES, LLC and TEN MILE EXCHANGE, LLC** | **CIVIL ACTION NO. 2:25-cv-02286 consolidated w/ 26-cv-1694**<br><br>**Ref: ALL CASES**<br><br>**JUDGE JAY C. ZAINEY**<br><br>**MAGISTRATE JUDGE KAREN WELLS ROBY** |

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO LIFT STAY**

MAY IT PLEASE THE COURT:

CP Marine Services, LLC ("CP Marine") and Ten Mile Exchange, LLC ("Ten Mile Exchange") file this Memorandum in Opposition to Plaintiff's Motion to Lift Stay, Rec. Doc. 38.

## I. PROCEDURAL HISTORY

On November 7, 2025, Plaintiff filed suit against CP Marine and Ten Mile Exchange. *Rec. Doc. 1.*

On March 9, 2026, Plaintiff answered written discovery and when asked details about his employment, referred to the employment releases allowing Defendants to obtain records from his employers, while indicating that he had undergone pre-employment physical examinations for those jobs. *See Plaintiff Answers to Initial Discovery, Int. No. 9, Ex. "A".*

Defendant used an employment release furnished by Plaintiff to request employment records from Natalie Jean Marine, LLC ("Natalie Jean Marine"); however, the company made an incomplete production as it only produced records pertaining to his employment from October 2025 through February 2026 and did not produce any records of his employment from March 27, 2024 through May 28, 2024.

On March 23, 2025, Plaintiff sought leave of Court to sue a third party, T&M Holdings, LLC ("T&M") as an additional defendant, which was granted on March 25. *Rec. Doc. 11, 12*.

On June 25, Plaintiff answered written discovery, wherein he identified Natalie Jean Marine as an employer, "though his physical capabilities were limited", without identifying that he developed a NEW right knee condition while working for that employer. *See Plaintiff Answers to Second Set of Discovery, Int. No. 4, Ex. "B".* In fact, Plaintiff has consistently claimed that he injured his right knee in the April 2025 accident. *See, Bone and Joint Clinic November 4, 2025 records, Ex. "C", and see, M&C Demands of Plaintiff, Ex. "D".*

Thereafter, upon realizing that his decision to sue a third party would result in a new trial date and further discovery, Plaintiff sought to partially disengage from T&M to allow him to proceed to trial against CP Marine and Ten Mile now, and then re-assess strategy afterwards and reconfigure his claims against T&M, under whatever circumstances he thought best suited his claims in a forum of his choosing –hence, his July 16th filing of Plaintiff's Motion for Partial Summary Judgment, requesting that he be allowed to dismiss his claims against T&M without prejudice. *Rec. Doc. 21.*

In response, on August 3, T&M exercised its statutory right and filed the Limitation Action. *Rec. Doc. 1, Civil Action No. 26-1694*.

On August 7, the deposition of Stan Kraly was conducted, at which it was learned, among other things:

1. that Plaintiff reported that he was recovered from his prior injury and capable of working when he sought employment on or about September 30, 2025 (*See Rough Draft of the August 7, 2026 Deposition of Stanley Kraley, 24:24 – 25:2, Ex. "E"*)

2. that Kraly is the person who referred Plaintiff to his legal counsel (*Id. at 154:8 - 161:14-181:20*)
3. that Kraly has been in contact with Plaintiff's legal counsel since that referral, which discussions have included coordination on liability issues seeking to prove the fault of Defendants (and by extension the exoneration of Natelie Jean Marine for its maintenance and cure obligations and potential liability for damages) (*Id.*)
4. the identities of Plaintiff's co-workers with personal knowledge of his work from October 2025 through February 2026 (*Id. at 33:9-21*),
5. that various records exist pertaining to Plaintiff's work at Natalie Jean Marine (*Id. at 81:3 – 82:22*),
6. that Plaintiff developed new lower extremity symptoms during his employment as a deckhand on the M/V GI JOE on or about November 3 (immediately prior to Plaintiff's first reporting of right knee symptoms to Dr. Duplantier on November 4), (*Id. at 43:19 – 44:6; 108:4 – 109:13*)
7. that Natalie Jean Marine did not have Plaintiff's symptoms evaluated or treated by a medical practitioner (*Id. at 114:10-17*)

On August 7, after testifying for some time, Natalie Jean Marine also produced the records of Plaintiff's employment with the company from March 27, 2024 through May 28, 2024, which demonstrated that Dr. Brian Bourgeois recommended that the company not hire him for maritime

employment due to Plaintiff's diabetes requiring insulin, since United States Coast Guard guidelines required further workup, investigation, and if appropriate, consideration by a medical professional of whether a medical waiver would be appropriate. *See, Rough Draft of the August 7, 2026 Deposition of Stanley Kraley, 81:3 – 82:22, Ex. "E", and see Supplemental 2024 Natalie Jean Marine Employment Records, Ex. "F"*.

On August 10, Defendants filed an Answer and Claim in the Limitation Action, seeking tort indemnity and/or contribution from T&M. *Rec. Doc. 5*.

On August 11, the Limitation Action and Plaintiff's suit were consolidated in this Court. *Rec. Doc. 32*.

On August 12, the Court established a monition period until October 31 to bring claims against T&M, staying all claims against that party, including Plaintiff's trial. *Rec. Doc. 36, par. 5*.

On August 13, the Court granted Plaintiff's Motion for Partial Summary Judgment, in part, finding that Plaintiff was a Jones Act seaman and that CP Marine was both the owner pro *hac vice* of the M/V DOUGLAS and his Jones Act employer on the date of his injury. *Rec. Doc. 37*. However, the Court denied Plaintiff's request to dismiss his claims against T&M without prejudice. *Id*.

On August 13, Plaintiff filed a Motion to Lift Stay in all cases. *Rec. Doc. 38*.

On August 13, CP Marine and Ten Mile Exchange sought leave of Court to bring a third-party claim against Natalie Jean Marine and also filed a Motion to Continue Trial. *Rec. Doc. 39, 40, 42*.

On August 20, Plaintiff's treating orthopedic surgeon, Dr. Barton Wax, was deposed and testified, **UNEQUIVOCALLY, that Plaintiff did not have ANY right knee problems during**

**his care of Plaintiff from April 5, 2025 through August 4, 2025, much less a torn right meniscus requiring knee surgery**.[1] Rather, Dr. Wax testified that Plaintiff sustained a serious injury in April 2025, received excellent medical care, recovered nicely, and while he was not without any residual issues whatsoever, by August 4, 2025, his leg was strong, his fracture was healed enough to withstand the rigors of work as a deckhand, his leg would have benefited from use including work as a deckhand, and both Plaintiff and Dr. Wax thought that Plaintiff should return to working as a deckhand based on his medical condition at that time. Dr. Wax directly disputed the preliminary opinion of plaintiff's subsequent physician, Dr. Neil Duplantier, that Plaintiff's leg injury "distracted" him from discovering the presence of the right knee condition, testifying that this was not possible. Dr Wax continued that this was so because following his injury, Dr. Wax and his staff would have continued to discuss with Plaintiff any symptoms he was experiencing, that he and his staff are trained to detect and treat medical problems, and that Plaintiff's reports, testing, and medical treatment showed that he did not have a right knee meniscus problem at any time on or before August 4, 2025.

## II. LAW AND ANALYSIS

The general rule in a limitation proceeding is to stay other actions pending the outcome of the limitation proceeding. 46 U.S.C. § 30511. *See also, In Cooper/T. Smith Stevedoring Co*., 1991 U.S. Dist. LEXIS 15211 (E.D. La. 1991). But, "if the necessary stipulations are provided to protect the rights of the shipowner under the Limitation Act, the claimants may proceed in state court". *In re Tetra Applied Techs. L.P.*, 362 F.3d 338, 341 (5th Cir. 2004).

According to the Fifth Circuit, there are only two instances in which the Court has discretion to lift a stay to allow claims to proceed outside a limitation action:

[1] Dr. Barton Wax's deposition transcript was unavailable at the time of filing this Opposition.

> (1) when the total amount of the claims does not exceed the shipowner's declared value of the vessel and its freight, and
> (2) when all claimants stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court.

*In re Tex. Petro. Inv. Co*., 2026 U.S. Dist. LEXIS 378 (E.D. La. Jan. 5, 2026), *citing, In re Devall Towing & Boat Service of Hackberry, L.L.C.*, 827 Fed. Appx. 411, 413 (5th Cir. 2020)(citation modified).

**a. Plaintiff Lacks Standing to Request Stay be Lifted**

In T&M's Limitation, it identified two *potential* claimants at the time of the filing of the case: (1) Plaintiff; and (2) CP Marine. *Rec. Doc. 1, par. 8, Civil Action No. 26-1694*. At present, there are two *actual* claimants that filed claims in the Limitation Action, neither of which is Plaintiff: (1) CP Marine; and (2) Ten Mile Exchange. *Rec. Doc. 5, Civil Action No. 26-1694*. The actual claimants are aware of two other potential claimants, (1) Plaintiff, and (2) Natalie Jean Marine, although these parties have not filed claims yet, as they have until October 31 to do so. *Rec. Doc. 36, par. 5*.

Because Plaintiff is not a party to the Limitation Action, he lacks standing to request that the stay be lifted in that case. Further, should Plaintiff intend to seek relief from the Stay, he must necessarily appear in the Limitation Action, as the "Order Directing Issuance Of Notice and Restraining Prosecution of Claims" stayed claims against T&M including motion practice in other proceedings, such as Plaintiff's suit. *Rec. Doc. 36, par. 5*.

**b. No Claimants Agree to Lifting Stay**

Fifth Circuit precedent is "clear that a district court abuses its discretion in allowing the state court action to proceed in the absence of a stipulation, *agreed to by all claimants*, protecting

the shipowner's right to limitation." *In re Tex. Petro. Inv. Co*., 2026 U.S. Dist. LEXIS 378, *16-17, citing, *In re Devall Towing & Boat Service of Hackberry, L.L.C*., 827 Fed. Appx. at 414 (emphasis added by citing Court).

Here, no actual claimants have made appropriate stipulations, and the actual claimants make clear with this filing that they do not intend to do so. Plaintiff argues that the claims of CP Marine and Ten Mile Exchange in the Limitation Action do not qualify these parties as "claimants", such that Plaintiff, who has not made a claim in the Limitation, should be considered a single claimant. This position is procedurally and legally incorrect and should be rejected. *In re Tex. Petro. Inv. Co*., 2026 U.S. Dist. LEXIS 378, *16-17, citing, *In re Lan Thi Nguyen*, No. 01-3510, 2002 U.S. Dist. LEXIS 18648 (E.D. La. Oct. 1, 2002) (Africk, J.)(finding stipulations insufficient where co-defendant cross-claimants did not join the stipulations at issue).

Further, no party can conclusively identify the universe of potential claimants until after the deadline expires, and even then, claims are sometimes allowed even after a Court has entered a Default against parties who have not made claims. *In re Mike Hooks LLC*, 2024 U.S. Dist. LEXIS 79138 (W.D. La. April 30, 2024).

Thus, the reasonable approach is to allow the monition period to proceed as directed by the Court, subject to consideration of extension in light of the pending claims against Natalie Jean Marine and its potential claims against T&M. Plaintiff has not shown any grounds to shorten the monition period, and doing so could make compliance with publication of the Notice to Claimants, or other related requirements of the Limitation Petitioner, impossible, and would abrogate its statutory right to invoke a concursus and seek Exoneration and/or Limitation of Liability for all claims arising from the casualty at issue.

**c. Single Trial of All Claims at Later Date is Supported by Joinder of New Parties, Incomplete Discovery, and Unresolved Medical Treatment**

Plaintiff argues that a single trial of all claims arising from the subject matter at dispute in the Limitation Action and Plaintiff's lawsuit is appropriate. *Rec. Doc. 38-1, p. 4-5, part D*. Defendants agree that the only procedure making sense for trial is to have all claims of all parties heard at one time, as is routinely done. However, the posture of the case, with claims stayed as to T&M and pending against Natalie Jean Marine who has not appeared, makes employing this procedure on the present October trial date an impossibility.

Defendants agree further that the parties have all worked diligently to prepare the case for trial, but that procedural decisions made by Plaintiff to join new parties to the litigation and new facts learned in discovery, which has resulted in the requested joinder of at least one more new party, have shown that discovery in this case is not complete such that a limited trial involving only some parties set for October 26 should be continued, and reset to another date. Doing so, allows the new parties to appear, allows the new parties to get up to speed, allows the new parties to revisit any prior discovery in which they did not participate, and then allows all parties to complete the discovery not yet completed. This is the only way to allow ALL claims of ALL parties to be heard, in a single proceeding allowing consistent results and efficient use of Court resources, in order to achieve justice.

Plaintiff's suggestion to the Court that Defendants did not learn any new information in the deposition of Stan Kraly, or that Defendants did not diligently pursue discovery from Kraly, is simply not true.

T&M appeared in the instant case on June 15 and on July 8, it requested Kraly's deposition and other depositions, in coordination with Defendants. *See, July 8, 2026 email correspondence between counsel, pages 4&5 of 5, Ex. "G".* Kraly's deposition was originally scheduled for a date

requested by Kraly, July 22, but rescheduled to August 7 at Kraly's request. *See, email correspondence between counsel, Ex. "H".* .

Prior to the deposition of Kraly, Plaintiff claimed that he injured his right knee on April 5, 2025, when he broke his right leg while working for CP Marine. *See, M&C Demands of Plaintiff, Ex. "D".* It was learned during the deposition of Kraly that Plaintiff showed no signs of injury at the time of his hire or for one month thereafter, but then suddenly manifested symptoms while working on a Natalie Jean Marine vessel. *See Deposition of Kraly, 111:12 – 112:6, Ex. "E".*

Prior to the deposition of Kraly, Plaintiff claimed that he worked for Natalie Jean Marine as a deckhand from on or about October 1, 2025 through February 2026. *Deposition of Plaintiff, 26:24 – 27:4; 68:15-17, Ex. "I".* Plaintiff testified that his recent employment with Natalie Jean Marine was largely identical to his earlier employment with that company in 2024, as he worked on the same vessel, in the same position as deckhand, under the same Captain. *Id. at 159:4-23*. Meanwhile, Kraly testified that he only hired Plaintiff, "…in a supervisory position on a limited, slash, light duty…" position, and, "He was hired primarily as a deckhand to act as a mentor/protégé to the two other deckhands we had on the vessel that were inexperienced." *See Deposition of Kraly, 35:2 – 36:25, Ex. "E".*

Defendants should be entitled to conduct discovery to determine the accuracy of the testimony of Plaintiff and Kraly concerning Plaintiff's job duties and whether his work was limited, and if so, the reason(s) therefore. Defendants should be allowed to depose any third parties with knowledge and Plaintiff's co-workers, including Tanner Kopp, Carlos Fields, Captain Mike Loup, and Trevor Kraly, all identified by Kraly to Defendants for the first time in his deposition testimony, concerning the details of Plaintiff's work, Plaintiff's complaints of pain/dysfunction or the lack thereof, and any accidents or injuries of Plaintiff while employed by Natalie Jean Marine.

Defendants should be allowed to seek records from Natalie Jean Marine, including safety and training records, accident report records, vessel logs, and other records.

Prior to the deposition of Kraly, it was unknown to Defendants: 1) that Kraly was a biased witness with an interest in a company that faces potential liability to Plaintiff, 2) that Kraly was the party who referred Plaintiff to his lawyers and encouraged him to sue Defendants, or 3) that Kraly has had at least eight phone calls (*See Deposition of Kraly, 172:11 – 177:10, Ex. "E"*) and at least one in person lunch meeting with Plaintiff's lawyers (*Id. at 177:11 – 180:11*) and 4) had discussions/coordinated liability issues seeking to prove fault on Defendants and to absolve Natalie Jean Marine of liability (*Id. at 183:3-25*).

Defendants should be allowed to conduct discovery on the level of coordination between Kraly and Plaintiff's counsel, and explore biases of the witness.

In light of the pending claims against Natalie Jean Marine, who is not yet represented by counsel, Defendants have delayed moving forward with these various discovery items and other discovery, as a courtesy to this litigant and their future counsel.

Moreover, on August 20, Plaintiff's treating surgeon, Dr. Barton Wax, testified that Plaintiff did not have any right knee symptoms, much less a right knee meniscus injury requiring surgery, at any time from April 5, 2025 through his release to full duty employment as a deckhand on August 4, 2025, when Dr. Wax was the sole treating provider of Plaintiff. *Deposition of Dr. Wax Not Yet Available*. Dr. Wax directly disputes the preliminary opinion of Dr. Neil Duplantier rendered on November 4, 2025, that Plaintiff's leg was a "distracting injury" that prevented discovery of his knee condition, as Dr. Wax made clear that he and his staff would have repeatedly sought to elicit information from Plaintiff on the medical status of his other body parts, such as his knee, and that Plaintiff performed physical therapy exercises that would have caused meniscus

symptoms to manifest. *Deposition of Dr. Wax Not Yet Available*; *see Bone and Joint Clinic November 4, 2025 records, Ex. "C"*.

Based on this newly discovered information, Defendants have sought to join Natalie Jean Marine to the litigation, as evidence to date shows that it faces liability for maintenance and cure obligations owed to Plaintiff, which have been satisfied in part by Defendants.

Finally, the fact that Plaintiff's medical providers claim that he is not at MMI, primarily due to the presence of a right knee meniscus injury, provides additional grounds to deny Plaintiff's Motion to Lift Stay, and continue trial instead. This is especially true since one provider, Dr. Neil Duplantier, is unable to offer future prognosis and vocational disability assessments of Plaintiff until after he recovers from a meniscus repair surgery on the right knee and undergoes a work hardening program and Functional Capacity Evaluation. *See, Stokes & Associates, Summary of Conference, May 27, 2026, Neil Duplantier, MD, Ex. "J"*.

Since Plaintiff's treating medical provider, Dr. Barton Wax, testified on August 20, that the right knee condition was not present during his treatment of Plaintiff (a fact that no other provider can dispute and that is further supported by the August 10 testimony of Plaintiff's treating physical therapist, Fred Eitmann, PT – with neither transcript available on this date), the unresolved medical condition of Plaintiff provides even more compelling reason to deny Plaintiff's request to lift the stay, and to continue trial instead.

After all, if Fred Eitmann, PT and Dr. Barton Wax are correct that any right knee injury of Plaintiff in existence was sustained after Plaintiff's employment with CP Marine ended and after he was medically cleared to return to work on August 4, 2025, and if that condition rendered Plaintiff disabled from occupation as a deckhand, that evidence is immensely important to

Defendants when determining what level of disability, if any, resulted to Plaintiff from his leg injury sustained on April 5, 2025.

In light of the above, it is evident that Defendants did not sit on their heels in discovery and manufacture reasons to avoid trial in October. Everyone worked hard and countless depositions have been taken; discovery in the case unfolded the way it did through the fault of no one. In the past several months, Plaintiff has added a new party to the case and recent discovery has shown the existence of new claims against a different new party sought to be joined. Just as the Court allowed Plaintiff to join T&M as a Defendant after the deadline for adding new parties expired, it should do the same with respect to Natalie Jean Marine here.

To allow all parties to litigate their claims arising from the lawsuit of Plaintiff, and to have a single trial of all related issues as suggested by Plaintiff, simply cannot be done on October 26, procedurally due to the Limitation Action of T&M, and logistically due to the absence of T&M, Natalie Jean Marine, and the many unresolved discovery issues that cannot be completed until after Natalie Jean Marine appears in the case. Thus, the Court should deny Plaintiff's request to lift the Stay of claims against T&M, for these and the other reasons set forth above.

**WHEREFORE** Defendants, CP Marine Services, LLC and Ten Mile Exchange, LLC respectfully pray that Plaintiffs' Motion to Lift Stay, Rec. Doc. 38, be denied.

Respectfully submitted,

/s/ *Paul D. Hale*

**PAUL D. HALE (Bar No. 30539)**
**KARI M. ROSAMOND (Bar No. 34065)**
**HALE DEVALL, LLC.**
400 Poydras Street, Suite 2107
New Orleans, LA 70130
Telephone: (504) 576-0700
Facsimile: (504) 383-0932
phale@haledevall.com

krosamond@haledevall.com

**Attorneys for CP Marine, LLC and Ten Mile Exchange, LLC**