**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN FERRIER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2286 C/W 26-1694** |
| **CP MARINE SERVICES, LLC ET AL.** | **SECTION: A(4)** |
| **REF: 26-1694** | |

# OPPOSITION

Plaintiff submits this *Opposition* to Defendants' *Motion for Leave to File Third Party Complaint.* (Rec. Doc. 42).

Defendants bring this motion on a single "new" fact: Stan Kraly testified at his August 7, 2026 deposition that he noticed Ferrier walking with a slight limp about a month into his employment at Natalie Jean Marine. Based on that testimony alone, Defendants claim they may *potentially* have a claim against Natalie Jean Marine "for tort indemnity, contribution, and/or equitable subrogation, concerning maintenance and cure obligations to or on behalf of Ferrier that have been, or could be, satisfied by CP Marine/Ten Mile."[1] Defendants argue that Kraly's testimony is "recently discovered" evidence of a new knee injury, giving them good cause to reopen the Scheduling Order and add Natalie Jean Marine as a third-party defendant more than four months after the deadline passed.[2] Defendants argue they "diligently worked" to bring these claims upon "discovery of the basis thereof, making the claim timely."[3] This is not so.

There is no good cause for Defendants untimely Third-Party Complaint against Natalie Jean Marine. The alleged factual basis for the proposed third-party claim is not new; rather, the

[1] Rec. Doc. 42-1, at 1.
[2] *Id.* at 8.
[3] *Id.*

circumstances surrounding Ferrier's subsequent employment with Natalie Jean Marine, including any alleged relationship between that employment and his knee injury, have been known since the inception of this case (in fact, Ferrier's Complaint alleged injury to his knee on November 7, 2025, Rec. Doc. 1, at ¶ 7). Defendants simply failed to take action within the time permitted by the Scheduling Order, which set March 23, 2026, as the deadline to amend pleadings and add third-party claims. Their belated attempt to pursue Natalie Jean Marine now does not arise from newly discovered evidence, but instead appears to be an effort to manufacture grounds for delaying the October 2026 trial.

In short, Ferrier disclosed his employment with Natalie Jean Marine well before that deadline, in his February 20, 2026 initial disclosures[4] and his March 9, 2026 discovery responses.[5] On March 13, 2026, Ferrier also testified about his physical capabilities, or lack thereof, at Natalie Jean Marine. Ferrier also testified about his knee complications.

Defendants' Joseph Dardar likewise testified about Ferrier's knee issue on May 19, 2026, mentioning Ferrier's knee could have been hurt at Natalie Jean Marine, which plainly shows Defendants knew about their purported claim against Natalie Jean Marine long ago. Defendants had the opportunity to bring Natalie Jean Marine in this case under the present Scheduling Order but chose not to do so.

Defendants cannot now, more than four months after that deadline passed and weeks before trial, use Stan Kraly's August 7, 2026 deposition as cover to add a new party they could

---

[4] Ex 1, Ferrier's Initial Disclosures.

[5] Ex 2, Pl.'s Resps. to Def.'s First Set of Written Disc. Reqs. to Pl. (March 9, 2026) Interrogatory No. 9 (asking for employers over the last ten years; Plaintiff responding: "Natalie Jean Marine and CP Marine / Ten Mile Exchange."); *id.* at Interrog No. 13 (asking for all sources of money received since the accident; Plaintiff responding: "None other than Plaintiff's brief employment with Natalie Jean Marine that post-dated the incident."); *id*. at Interrog. No. 14 (asking about training and qualifications; Plaintiff responding: "Plaintiff also received limited familiarization with vessels on which he worked for Natalie Jean Marine and CP Marine/Ten Mile Exchange."); *see also* Ex. 9, Pl.'s Resps. to Defs.' Second Set of Interrogs. & Reqs. for Produc. of Docs., Interrog. No. 4 (June 25, 2026) (identifying Natalie Jean Marine, LLC as Ferrier's employer "immediately preceding and subsequent to CP Marine" and stating his employment there ran "October 2025 to February 2026").

have added all along. Defendants also use this same "recent development" as grounds to continue trial. It is not a recent development, and it is not good cause for either request.

## BACKGROUND

On April 6, 2025, Ferrier's leg was crushed by a mooring line when the captain of the M/V DOUGLAS negligently maneuvered the vessel before the mooring operation was complete. Ferrier underwent two surgeries to treat his shattered leg. On August 4, 2025, his surgeon, Dr. Wax, released Ferrier to "[r]eturn to full duty work as tolerated."[6] **In that same note, Dr. Wax documented an "antalgic gait," (i.e. a limp) tying Ferrier's limp to his April 2025 injury months before he ever worked for Natalie Jean Marine, and <u>one year before Kraly testified</u> he saw Ferrier limp.**[7]

Ferrier returned to work for CP Marine shortly thereafter. Fewer than 10 days working for CP Marine, CP Marine terminated Ferrier, noting in the termination letter that he had "not demonstrated the physical capability required to effectively carry out the essential duties of the position."[8]

On October 3, 2025, Ferrier returned to work (out of necessity) for his prior employer, Natalie Jean Marine in a light-duty capacity.[9] In early February 2026, Natalie Jean Marine terminated Ferrier's employment because he was no longer physically fit to perform his duties as a deckhand.

On November 7, 2025, Ferrier filed his Original Seaman's Complaint against CP Marine Services, LLC and Ten Mile Exchange, LLC. **That Complaint alleged that "[t]he incident**

---

[6] Ex 3, Quick Note of Barton L. Wax, M.D. (Aug. 4, 2025), Ferrier Medicals 000362.

[7] *Id.* This confirms that any later-observed limp, including the limp Stan Kraly described in his deposition, was incident-related and a causation issue in this case from the outset — one Defendants simply failed to investigate.

[8] Ex 4, Ferrier's Termination Letter.

[9] Ex 5, Kraly Dep. 35:22–36:6, 46:7–10, 49:17–50:11, 52:10–18 (testifying he asked Ferrier "if he felt like he was okay to go -- come to work in a light-duty capacity," and that he "put Jonathan on a light-duty, quote/unquote, status").

**caused Plaintiff to sustain severe and debilitating emotional and physical injuries to his leg, knee, ankle, and other parts of his body."**[10]

The Court set March 23, 2026 to amend pleadings and file third party actions.

Defendants have been on notice of their maintenance and cure obligations to Ferrier since October 8, 2025, which was ignored. On October 8, 2025, Ferrier's counsel sent CP Marine and Ten Mile Exchange a letter of representation advising them of the April 5, 2025 incident and reminding them of their "ongoing legal obligations to provide Mr. Ferrier with maintenance and cure."[11] On November 7, 2025, Defendants again were notified of maintenance and cure obligations and also of Ferrier's knee complaints. Then, on March 6, 2026, Ferrier's counsel sent a maintenance and cure demand letter regarding that Ferrier had received several rounds of knee injections and undergone a February 12, 2026 MRI.[12] The letter includes the doctor's impressions from Ferrier's medical records showing a longitudinal oblique tear of the medial meniscus, patellar tendinosis, and a stress fracture of the medial tibial plateau.[13] It attributed the knee condition to Ferrier's "lingering issues associated with his April 5, 2025, incident," not to any new injury arising during his employment with Natalie Jean Marine.[14] Defendants neither responded nor took up the offer to have Ferrier examined by a physician of their choosing. Ferrier's counsel sent four more demand letters repeating the same diagnosis and the same causation — April 23, 2026,[15] May 28, 2026,[16] June 15, 2026,[17] and June 29, 2026[18]— each one also unanswered. By the time Kraly was deposed on August 7, 2026, Defendants had been on

[10] Rec. Doc. 1, at ¶ 7 (emphasis added).
[11] Ex. 6, Letter of Representation, Oct. 8, 2025.
[12] Rec. Doc. 42-8, at 3–4.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 5–6.
[16] *Id.* at 1–2.
[17] *Id.* at 12–15.
[18] *Id.* at 16–18.

notice of the incident for ten months and had received the same knee information six separate times.

On March 13, 2026, Defendants deposed Ferrier, who testified about his knee injury and complications, his subsequent employment at Natalie Jean Marine, and the absence of any new injury during that employment. (discussed in greater detail below.)

On May 19, 2026, Ferrier deposed Joseph Dardar, who was questioned directly about CP Marine's maintenance and cure obligations and how those obligations might intersect with Natalie Jean Marine. Dardar raised, unprompted, the possibility that Ferrier could have been injured at Natalie Jean Marine. (discussed in greater detail below).

Defendants deposed Stan Kraly[19] on August 7, 2026.

Now, Defendants seeks leave to file a Third Party Complaint against Natalie Jean Marine, a subsequent employer of Ferrier, arguing that "recent discovery" has revealed "a ***potential*** claim against Natalie Jean Marine for tort indemnity, contribution, and/or equitable subrogation, concerning payment of maintenance and cure obligations to or on behalf of Mr. Ferrier that have been, or could be, satisfied by CP Marine/Ten Mile."[20]

Defendants argue they should be permitted to bring the Third-Party Complaint because it is possible that Ferrier suffered a new knee injury sometime between his first day of subsequent employment with Natalie Jean Marine and November 3, 2025 — the day before Dr. Duplantier first noted a knee complaint during his initial evaluation of Ferrier.[21] The claimed basis for the late "discovery" of this new-injury theory is the timing of CP Marine's own delayed deposition of Natalie Jean Marine's manager, Stan Kraly. Defendants rely mainly on Stan Kraly's deposition

---

[19] Stanley Kraly is Natalie Jean Marine's Port Captain and husband of the owner of Natalie Jean Marine.
[20] Rec. Doc. 42, at 1 (emphasis added).
[21] *Id.* at 7.

testimony, where he observed Ferrier with a limp. However, Dr. Wax's August 4, 2025 already notes Ferrier's limp. This issue boils down to a causation issue to be determined by the jury at trial, not for a Third Part Complaint. Additionally (as discussed below) Defendants did not diligent and there is no good cause.

## LEGAL STANDARD

Defendants call the instant motion for leave to file a third-party complaint under Rule 14(a)(1). That label is wrong. The Scheduling Order set March 23, 2025 as the deadline to add third-party actions. That deadline passed five months ago. Defendants are not asking to file a pleading on time. They are asking the Court to reopen a deadline that has already closed. That request is governed by Rule 16(b)(4), not Rule 14(a)(1). Rule 16(b)(4) allows a court to modify a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Before the Court reaches whether impleader is proper under Rule 14, Defendants must first show good cause to amend the Scheduling Order. They cannot skip that threshold showing by mislabeling their motion.

Federal Rule of Civil Procedure 16(b)(4) applies specifically to requests to modify a court's scheduling order. Pursuant to that rule, a court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In this context, to show good cause, the party seeking to modify the scheduling order must show "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

In considering such requests, courts in the Fifth Circuit examine four factors: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the

modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 237 (5th Cir. 2015) (cleaned up). A district court's discretion to modify a scheduling order "is exceedingly wide" and the "court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (internal citation and quotation omitted).

## ANALYSIS

The issue before the Court is whether Defendants have shown good cause to add a new party and claim after the deadline. Fed. R. Civ. P. 16(b)(4). Defendants have not shown good cause. Even if they had, their proposed Third-Party Complaint fails on its own terms.

### A. Defendants Have Not Shown Good Cause

Good cause requires diligence. The record shows the opposite.

First, Defendants do not offer an adequate explanation for their delay and lack of diligence. The record shows continuous notice of Ferrier's knee issue and his subsequent employment at Natalie Jean Marine from the inception of this case. In fact, Ferrier's Complaint, filed on November 7, 2025, (more than four months before the deadline to add third-party actions) put Defendants on notice of the knee injury. Paragraph 7 of the Complaint alleges that "[t]he incident caused Plaintiff to sustain severe and debilitating emotional and physical injuries to his leg, knee, ankle, and other parts of his body."[22]

The relevant question is not when Defendants decided they had enough evidence to pursue Natalie Jean Marine, but when they knew (or with reasonable diligence should have known) the facts underlying the proposed third-party claim. That occurred months earlier. The

[22] Rec. Doc. 1, at ¶ 7.

Complaint, Ferrier's initial disclosures, produced medical records, five demand letters, and Ferrier's deposition testimony all disclosed Ferrier's subsequent employment with Natalie Jean Marine and the alleged relationship between that employment and his knee condition. Defendants' own conduct confirms that knowledge: Dardar (during his deposition) independently questioned whether Ferrier's knee condition related to his work for Natalie Jean Marine, and Defendants had Dr. McNulty examine Ferrier. Much of this preceded the March 23, 2026 deadline for filing third-party actions, and the remainder followed shortly thereafter. Regardless, this was well before Kraly's August 2026 deposition.

Yet Defendants did not seek leave to bring Natalie Jean Marine into this case until August 14, 2026. Kraly's deposition did not reveal a new potential third-party claim. Defendants cannot manufacture diligence by waiting for cumulative testimony before asserting a claim they could have pursued earlier. Their reliance on Kraly's deposition therefore does not excuse the delay; it underscores their lack of diligence. This factor weighs against modification.

Second, the proposed Third Party Complaint is not important to the instant case because the alleged issue is one of causation. The jury can determine what caused Ferrier's knee injury and adjudicate CP Marine's liability for maintenance and cure without Natalie Jean Marine in the case.

Third, Defendants cannot show that denying leave causes them any prejudice: they may have a *potential* claim, based on certain outcomes.

Fourth, Defendants are not prejudiced. Therefore, a continuance doesn't add any benefit. This is not the first delay tactic Defendants have deployed in this litigation. T&M Holdings filed a Limitation Action even though it had already raised limitation as an affirmative defense in its Answer, and even though the only two potential claimants (CP Marine and Ferrier) were already

parties before this Court. This motion follows the same pattern. CP Marine and Ten Mile raise the identical "recently discovered evidence" argument here that they raise in their *Motion to Continue Trial* (Rec. Doc. 40) using Kraly's deposition to justify both requests. Granting leave to amend would not cure any prejudice — it would simply shift that prejudice onto Ferrier.

1. **Defendants had continuous notice of Ferrier's knee condition, and ignored it.**

Defendants have been on notice of Ferrier's maintenance and cure claim since October 8, 2025.[23] Their actual knowledge of his knee condition goes back even further. Dr. Wax's August 4, 2025 note documented an antalgic gait tied to the original incident, and Ferrier testified that he complained directly to Defendants' employees that his knee was hurting. At the very latest, Defendants had notice of the knee condition by November 7, 2025, when Ferrier filed his Complaint alleging injury to his "leg, knee, ankle, and other parts of his body."

On March 6, 2026,[24] Ferrier's counsel sent that demand letter with his February 12, 2026 MRI impressions and results, showing a torn medial meniscus, patellar tendinosis, and a stress fracture of the tibial plateau.[25] Defendants did not respond. Ferrier's counsel sent four more letters — April 23, 2026;[26] May 28, 2026;[27] June 15, 2026;[28] and June 29, 2026.[29] Defendants did not act diligently and waited until May 20, 2026 to have him evaluated with an IME by Dr. McNulty.[30]

On March 13, 2026, Ferrier testified that his first surgery included external fixation hardware — two bolts placed just below his knee to stabilize his leg while his shattered tibia and

[23] Ex. 6, Letter of Representation, Oct. 8, 2025.
[24] Rec. Doc. 42-8, at 3–4.
[25] *Id.*
[26] *Id.* at 5–6.
[27] *Id.* at 1–2.
[28] *Id.* at 12–15.
[29] *Id.* at 16–18.
[30] Rec. Doc. 42-7, at 1–4.

fibula healed.[31] Doctors later removed that hardware and installed plates and screws during his second surgery, and Ferrier testified that a future surgery may be needed simply to remove the remaining hardware from his leg.[32] Beyond the hardware, Ferrier testified that Dr. Duplantier identified a torn meniscus and damaged cartilage.[33] Ferrier described ongoing symptoms: his knee locks up and goes numb when driving, he cannot fully bend or squat, and kneeling feels "like someone put a sword through my knee."[34]

Ferrier testified that he began his second stint with Natalie Jean Marine on October 3, 2025, working as a deckhand on the GI JOE under Stan Kraly.[35] He worked that job until February 2026, when Natalie Jean Marine terminated him.[36] Ferrier testified that Kraly fired him because his performance had declined due to his injuries, telling him he had "lost a step."[37] Ferrier explained that his injuries left him unable to lift heavy items he had previously handled without difficulty, including cables, face wires, ratchets, and pelican hooks, and that his walking had also worsened.[38] Ferrier testified he had no accidents or new injuries during that employment.[39]

**2. Defendants' Joseph Dardar's own testimony show Defendants already had the theory they now claim is new.**

Defendants' own witness (Joseph Dardar) confirmed Defendants had considered this "new" *potential claim* prior to now. On May 19, 2026, Ferrier deposed Joseph Dardar who was questioned directly about maintenance and cure and how those obligations might intersect with

[31] Ex 7, Ferrier Dep. 132:12–19; 133:7–25, 134:1–10.
[32] *Id*. at 138:8–23, 139:1–15.
[33] *Id*. at 138:15–139:15.
[34] *Id*. at 170:24–171:12.
[35] *Id.* at 159:4–21.
[36] *Id.* at 159:24–160:7.
[37] *Id.* at 160:8–19.
[38] *Id.* at 160:20–161:21.
[39] *Id.* at 160:5–7.

Natalie Jean Marine.[40] When asked about Ferrier's unanswered maintenance and cure demands, Dardar volunteered, unprompted, that Ferrier may have suffered a subsequent knee injury while working for Natalie Jean Marine: "He could've hurt himself on the NATALIE JEAN for his knee."[41] Dardar also testified that Ferrier's original medical treatment following the April 5, 2025 incident should have been worked up more thoroughly, stating "[t]hey should've caught that torn meniscus" at that time.[42]

Defendants already knew about Ferrier's employment at Natalie Jean Marine, his physical limitations, and the maintenance and cure issues months before Kraly's August 7, 2026 deposition. Defendants already identified the exact issue the instant motion present. Their claim that they had no idea until Kraly's deposition does not hold up. The Court should not accept the notion that Defendants experienced a sudden revelation on August 7, 2026, when CP Marine finally deposed Natalie Jean Marine's witness, Stan Kraly, on an issue their own client had already flagged.

**3. Defendants' own expert reports confirm that the Natalie Jean Marine issue was already part of this case.**

Defendants' own expert reports confirm that the causation of Ferrier's knee was already on the table well before Kraly's deposition. Dr. McNulty examined Ferrier on May 20, 2026 (nearly three months before Kraly testified) and concluded that Ferrier's knee symptoms are unrelated to the April 5, 2025 incident, reasoning that a symptomatic meniscus tear from that accident would have caused complaints and limitations earlier than November 2025.[43] Ferrier's Dr. Duplantier reached the opposite conclusion. His November 4, 2025 note states Ferrier "may have injured his right knee at the same time" he broke his tibia and fibula in the original

[40] Ex 8, Dardar Dep. 188:21–192:23.
[41] *Id.* at 188:21–24.
[42] *Id.* at 192:19–23.
[43] Rec. Doc. 42-7, at 4.

accident, and his May 26, 2026 follow-up concludes it is "more likely than not" that the knee pathology traces to that same incident.[44] This factual issue illustrates the ongoing issue in the case regarding Ferrier's knee injury and Natalie Jean Marine.

Kraly's testimony is not new evidence of a *potential claim*. Kraly's testimony added nothing Defendants did not already know. With trial nine weeks away, Defendants now seek to reopen a closed deadline based on a theory the record shows they had every opportunity, and every reason, to pursue months earlier. This is  not acting diligently to move to add Natalie Jean Marine. Instead, Defendants waited until weeks before trial and cannot manufacture good cause out of facts they already had.

**B. The Proposed Third-Party Complaint is Not Adequate – It Alleges No Hard Facts**

Even if Defendants had shown good cause, their proposed Third-Party Complaint does not state a claim. For maintenance and cure purposes, it matters only whether Ferrier's injury "occurred, was aggravated, or manifested itself" during his employment as a seaman on a vessel while he was in Natalie Jean Marine's service. The proposed pleading does not allege that. Every substantive claim is pled as a contingency — "in the event it is found" that Ferrier sustained a new injury, or that his condition worsened during that employment, Defendants may recover.[45]

The only factual allegation in the proposed complaint is that Kraly noticed Ferrier walking with a slight limp about a month into his employment and did not send him to a doctor.[46] That allegation supplies no causal nexus. A limp is a symptom, not an injury, and noticing one is not the same as causing or aggravating one.[47] Defendants' own pleading confirms as much: Kraly was not aware of any new incident during Ferrier's employment.[48] Ferrier testified to the

[44] Rec. Doc. 42-6, at 2, 6.
[45] Rec. Doc. 42-3, ¶¶ 18–20.
[46] *Id.* at ¶¶ 13–14.
[47] Further, Dr. Wax's (Ferrier's surgeon) documented his limp on August 4, 2025.
[48] *See id.* ¶ 13

same thing.[49] Defendants nevertheless characterize Kraly's testimony as evidence that Ferrier sustained a "new" injury while working for Natalie Jean Marine, separate and distinct from his injuries caused by his April 2025 incident.

Moreover, Defendants' own retained physician, Dr. McNulty, disputes that causation opinion of Ferrier's doctor, Dr. Duplantier, but even Dr. McNulty does not allege that Natalie Jean Marine caused a new injury.[50] The dispute Defendants describe is a disagreement about causation of Ferrier's knee injury. It is not a claim against Natalie Jean Marine.

A closed deadline should not be reopened, weeks before trial, for a claim that pleads no causal connection between Natalie Jean Marine and Ferrier's injury at issue.

**C. Ferrier's Knee injury Presents a Causation Issue for Trial — Not a Basis for a Third-Party Complaint**

Whether Ferrier's knee injury traces to the original April 5, 2025 incident or to some other cause is a causation dispute for trial. It is not a basis for an untimely third-party complaint. Dr. Duplantier ties the knee pathology to the original incident.[51] Dr. McNulty disagrees.[52] That is a dispute between two doctors about one incident, and the jury will resolve it. Defendants do not need a new party to try this issue. They need only present their evidence at trial.

As it relates to the maintenance and cure obligations, the Court does not need a third-party defendant to sort out who owes what. If the jury finds that it does not, it can deny Ferrier's maintenance and cure claim for his knee. Either way, resolving Defendants' maintenance and cure obligation to Ferrier does not require adding Natalie Jean Marine as a party. It requires only that Defendants try the case they have had every opportunity to prepare.

---

[49] Ex 7, Ferrier Dep. 160:5–7.
[50] *See* Rec. Doc. 42-7.
[51] Rec. Doc. 42-6, at 2, 6.
[52] Rec. Doc. 42-7.

## CONCLUSION

For the foregoing reasons, Plaintiff Jonathan Ferrier respectfully requests that this Court deny Defendants' *Motion for Leave to File Third Party Complaint* (Rec. Doc. 42). Defendants cannot show good cause.

Respectfully submitted by:

**ADAM DAVIS LAW FIRM**
*/s/ Adam N. Davis*
Adam Neely Davis (La. Bar No. 35740)
Taylor M. Bologna (La. Bar No. 37594)
Michelle Pare Ricca (La. Bar. No. 41385)
22398 LA 435
Abita Springs, Louisiana 70420
Email: ad@adamdavislawfirm.com
taylor@adamdavislawfirm.com
michelle@adamdavislawfirm.com
Telephone: (504)-553-1435
Facsimile: (504)-553-1439
**ATTORNEYS FOR PLAINTIFF JONATHAN FERRIER**