**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN FERRIER**<br><br>**v.**<br><br>**CP MARINE SERVICES, LLC and TEN MILE EXCHANGE, LLC** | **CIVIL ACTION NO. 2:25-cv-02286 consolidated w/ 26-cv-1694**<br><br>**Ref: 25-2286**<br><br>**JUDGE JAY C. ZAINEY**<br><br>**MAGISTRATE JUDGE KAREN WELLS ROBY** |

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION IN LIMINE TO LIMIT TESTIMONY OF**
**MICHAEL MCNULTY, MD, TO THE FOUR CORNERS OF HIS REPORT**

MAY IT PLEASE THE COURT:

CP Marine Services, LLC ("CP Marine") and Ten Mile Exchange, LLC ("Ten Mile Exchange") file this Memorandum in Opposition to Plaintiff's Motion in Limine to Limit the Testimony of Michael McNulty, MD, to the Four Corners of His Report, Rec. Doc. 45.

Plaintiff seeks to limit the testimony of Dr. McNulty at trial, claiming that his opinion on various topics has not been expressed in an expert report. Plaintiff attempts to take the general statement of Rule 26 that an expert must state their opinions within the four corners of their expert report, to seek a specific ruling, in advance, that nuanced medical testimony not yet before the Court should be excluded from trial, before the testimony can be considered.

Nonetheless, Plaintiff's Motion is nothing more than an attempt to play, Gotcha, but it fails because the actual opinion of Dr. McNulty is clearly expressed throughout his IME Report, the

Report of Stacie Nunez, and the Summary Sheet of Conference with Nunez/McNulty[1], Plaintiff's motion should be denied.

## I. OPINION OF DR. MICHAEL MCNULTY

Dr. McNulty was retained by Defendants to conduct an IME of Plaintiff. Despite Plaintiff's claims that the scope of his examination was limited to the right knee, he clearly considered the totality of Plaintiff's physical condition, including his right leg injury, and rendered an opinion that encompasses the areas that Plaintiff seeks to prevent testimony on, namely (1) Plaintiff's ability to work, and in what capacity; (2) the necessity of medical care recommended by Plaintiff's physicians, and medical causation of that treatment; (3) the opinions of Drs. Lonseth and Duplantier; and (4) to the extent that Plaintiff's medical care has continued beyond the date of records available to Dr. McNulty at the time he rendered an opinion, he should be allowed to supplement his opinion.

The opinions of Dr. McNulty are expressed in his report and in the report of Stacie Nunez, pursuant to her conference with Dr. McNulty in forming her life care plan concerning future medical treatment, and expressed in a Summary Sheet of the experts' discussion on this case. *See, Report of Dr. McNulty, Ex. "A"; Report of Stacie Nunez, Ex. "B"; Conference with Dr. McNulty, Ex. "C".*

In the IME Report, Dr. McNulty noted that Chief Complaint of Plaintiff was his right knee, but the history taken by Dr. McNulty included the injury to his right leg and resulting treatment. *See, Report of Dr. McNulty, p. 1, Ex. "A."* However, Plaintiff reported minimal issues with his leg

[1] Defendant discovered today that the summary of conference between Dr. McNulty and Nunez may have been inadvertently not produced with the remaining expert report disclosures; it was produced today. This is addressed below. See, Ex. "C".

injury, such as tenderness near the hardware, but made the right knee the focus of his complaints. *Id.*

With respect to the medical treatment for Plaintiff's right leg, Dr. McNulty noted Plaintiff's full/unrestricted release to work in September 2025, that he underwent a USCG Form 719-K Physical wherein it was determined that no medical conditions were present and,

> he was cleared to have the physical strength, agility, and flexibility to perform all the items listed on the physical ability table. These included the ability to climb up and down vertical ladders or stairs, crawling, crouching, lifting, pulling, pushing or carrying a load as well as stepping over high obstacles and moving through restricted access, climbing up and down vertical ladders and stairways amongst other necessary duties.

*See, Report of Dr. McNulty, p. 2, Ex. "A".* That table of tasks that Plaintiff was determined capable of performing on September 30, 2025 is shown below:

**Section VIII: Demonstration of Physical Ability – To be completed by the Medical Practitioner**

**LISTS OF TASKS CONSIDERED NECESSARY FOR PERFORMING ORDINARY AND EMERGENCY RESPONSE SHIPBOARD FUNCTIONS**

| Shipboard Tasks, Function, Event, or Condition | Related Physical Ability | The Examiner Should Be Satisfied That The Applicant: |
|---|---|---|
| Routine movement on slippery, uneven, and unstable surfaces | Maintain balance (equilibrium) | Has no disturbance in sense of balance |
| Routine access between levels | Climb up and down vertical ladders and stairways | Is able, without assistance, to climb up and down vertical ladders and stairways |
| Routine movement between spaces and compartments | Step over high doorsills and coamings, and move through restricted accesses | Is able, without assistance, to step over a doorsill or coaming of 24 inches (600 millimeters) in height. Able to move through a restricted opening of 24 x 24 inches |
| Open and close watertight doors, hand cranking systems, open/close valve | Manipulate mechanical devices using manual and digital dexterity, and strength | Is able, without assistance, to open and close watertight doors that may weigh up to 55 pounds (25 kilograms); should be able to move hands/arms to open and close valve wheels in vertical and horizontal directions; rotate wrists to turn handles; able to reach above shoulder height |
| Handle ship's stores | Lift, pull, push, carry a load | Is able, without assistance, to lift at least a 40 pound (18.1 kilograms) load off the ground, and to carry, push, or pull the same load |
| General vessel maintenance | Crouch (lowering height by bending knees); kneel (placing knees on ground); stoop (lowering height by bending at the waist); use hand tools | Is able, without assistance, to grasp, lift, and manipulate various common shipboard tools |

| | | |
|---|---|---|
| | such as spanners, valve wrenches, hammers, screwdrivers, pliers | |
| Emergency response procedures including escape from smoke-filled spaces | Crawl (ability to move body using hands and knees); feel (ability to handle or touch to examine or determine differences in texture and temperature) | Is able, without assistance, to crouch, kneel, and crawl, and to distinguish differences in texture and temperature by feel |
| Stand a routine watch | Stand a routine watch | Is able, without assistance, to intermittently stand on feet for up to four hours with minimal rest periods |
| React to visual alarms and instructions, emergency response procedures | Distinguish an object or shape at a certain distance | Fulfills the eyesight standards for the merchant mariner credential |
| React to audible alarms and instructions, emergency response procedures | Hear a specified decibel (dB) sound at a specified frequency | Fulfills the hearing standards for the merchant mariner credential |
| Make verbal reports or call attention to suspicious or emergency conditions | Describe immediate surroundings and activities, and pronounce words clearly | Is capable of normal conversation |
| Participate in fire fighting activities | Be able to carry and handle fire hoses and fire extinguishers | Is able, without assistance, to pull an uncharged 1.5 inch diameter, 50' fire hose with nozzle to full extension, and to lift a charged 1.5 inch diameter fire hose to fire fighting position |
| Abandon ship | Use survival equipment | Has the agility, strength, and range of motion to put on a personal flotation device and exposure suit without assistance from another individual |

[2]

Dr. McNulty considered the additional treatment received by Plaintiff thereafter from Drs. Lonseth and Duplantier. With respect to the right leg injury, Dr. McNulty concluded that, "Mr. Ferrier sustained a right tibia/fibula fracture in a tugboat work-related incident. I believe he has been treated appropriately and all care to date has been indicated." *See, Report of Dr. McNulty, p. 4, Ex. "A"*. In other words, Dr. McNulty diagnosed the right leg injury as a tibia/fibula fracture and agrees with the treatment Plaintiff received for that injury through March 31.

Dr. McNulty also stated his opinion that Plaintiff was treated for that right leg injury and released for unrestricted work by Dr. Wax by September, had no further medical problems related to the accident, was cleared of any medical conditions and to work by another medical provider in

[2] USCG Form 719-K Physical.

the USCG Form 719-K Physical on September 30, 2025, and returned to the workforce as a deckhand without incident. See, Report of Dr. McNulty, p. 4, Ex. “A”.

Dr. McNulty states his opinion in the Report, that Plaintiff’s knee symptoms did not surface until November 2025, and for the reasons stated therein, Dr. McNulty found that the right knee condition was not related to the accident in suit and must have been sustained after his release to return to work and the September 30, 2025, USCG Physical. *See, Report of Dr. McNulty, p. 4, Ex. “A”.*

Finally, Dr. McNulty determined that in the absence of the right knee surgery, Plaintiff reached Maximum Medical Improvement (MMI) approximately one year after the accident. *Id.* Considering the definition of MMI, implicit in this opinion is the fact that Plaintiff does not require further medical treatment for his right leg injury.

MMI is the point at which no further improvement in the seaman's medical condition is reasonably expected. *See Lauland v. Hugh Eymard Towing Co., Inc*.,2000 U.S. Dist. LEXIS 6447, *20, 2000 WL 533880, *7 (*citing Farrell v. United States*, 336 U.S. 511, 518, 93 L. Ed. 850, 69 S. Ct. 707 (1949)). In other words, MMI is the point beyond which it is not reasonably possible that medical treatment will "reduce [the amount of the seaman's] disability," be "curative," "better the seaman's condition," or "improve [his] health." *Vella v. Ford Motor Co*.,421 U.S. 1, 43 L. Ed. 2d 682, 95 S. Ct. 1381 (1974); *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 374 n.3 (5th Cir. 1981); *Pelotto v. L&N Towing Co*.,604 F.2d 396, 400 (5th Cir. 1970). Thus, it is clear that Dr. McNulty expressed his medical opinion about the lack of further medical treatment of Plaintiff related to the accident, and to the extent that differs from Plaintiff’s physicians, Dr. McNulty has noted his disagreement.

However, Dr. McNulty's opinions were further expressed in the Report of Stacie Nunez, as she held a conference with Dr. McNulty on his recommended future care in order to develop a life care plan setting forth future medical care needs. Nunez's report made clear:

> Dr. McNulty opined that he does not relate Mr. Ferrier's complaints to the April 5, 2025 incident. Dr. McNulty recommended no future medical treatment for Mr. Ferrier as it relates to the April 5, 2025 incident. Dr. McNulty opined he would place no physical restrictions upon Mr. Ferrier in regard to returning to the workforce as related to the April 5, 2025 incident.

*See Report of Stacie Nunez, p. 5, Ex. "B".*

The summary sheet of the Nunez' conference with Dr. McNulty determined that Dr. McNulty found the only medical condition present at the time of his evaluation was right knee pain resulting from a medial meniscus tear, but that he does not relate that condition to the accident in suit. *See Conference with Dr. McNulty, Nos. 1 and 2, Ex. "C".* Dr. McNulty opined that Plaintiff could require medical treatment in the future, including knee arthroscopy, meniscus repair vs. partial meniscectomy, and hardware removal, but he did not relate this treatment to the accident in suit, and did not recommend any medication, diagnostic studies, physical therapy, acupuncture, or surgeries/injections due to injuries sustained in the accident. *See, Conference with Dr. McNulty, Nos. 3 – 9, Ex. "C".* Dr. McNulty further opined that Plaintiff has no physical work restrictions related to injuries sustained in the accident. *Id*. at No. 10.

## II. LAW AND ANALYSIS

Courts have recognized that it is unrealistic to expect an expert to reduce every detail of his opinions to writing in a report produced under Fed.R.Civ.P. 26(a)(2)(B). In *Planet Construction J2911 LLC v. Gemini Ins. Co*., W.D. La. No. 2:22-cv-01075, 2023 WL 5670471 (Aug. 14, 2023), the defendant moved to exclude the plaintiff's expert witness based, in part, on an argument that the expert's post-report declaration went beyond the opinions expressed in his

report. The plaintiff countered that the expert's declaration was "a minor and logical extension of the opinions contained in [the] expert report." The court denied the motion to exclude, noting that "[t]he overarching goal is to get to the truth of what happened." *Id*. at *3. The court further noted that "[w]hat is evident here is that [the parties' experts] have conflicting opinions . . . This is an issue for the factfinder at trial; it is 'the jury's role as the arbiter of disputes between conflicting opinions.'" *Id*. at *4 (citing, *Viterbo v. Dow Chem. Co*., 826 F.2d 420, 422 (5th Cir. 1987)).

In *United States ex rel. Rigsby v. State Farm Fire & Cas. Co*., S.D. Miss. No. 1:06CV433-HSO-RHW, 2013 WL 11320129, at *1 (Feb. 26, 2013), the court recognized that an expert's testimony is not limited to the text of his report, but may also include explanations which are a "reasonable extension of his report." *Id*. (citing, *Bates & Co., Inc. v. Hosokawa Micron Intern., Inc*., E.D. Tex. No. 1:04-CV-475, 2005 WL 6227845, *1 (April 4, 2005)). In *Bates & Co*., the court recognized that "it is unrealistic to expect all possible testimony to be included in a report." For this reason, the *Bates & Co*. court recognized that an expert should be permitted to testify beyond the four corners of his expert report, so long as the testimony concerns explanations and "reasonable extension[s]" of his report.

Further, in similar contexts, courts have recognized that "the exclusion of evidence is a harsh penalty and should be used sparingly." See, *e.g., Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 758 (N.D. Tex. 2021) (citing, *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995))).

Here, despite Plaintiff's claims, Dr McNulty has provided his opinion on:

(1) Plaintiff's ability to work, and in what capacity;

   a. Dr. McNulty's IME Report notes his consent to the Plaintiff's return to the workforce as a deckhand pursuant to his unrestricted work release by Dr. Wax;

b. Dr. McNulty's IME Report noted his opinion that Plaintiff was capable of working as a deckhand without restrictions on September 30, 2025, when the USCG Form 719-K Physical reflected this fact and the determination of the examining medical provider;

c. Dr. McNulty's IME Report noted his opinion that Plaintiff returned to the workforce without incident, until he sustained an unrelated right knee injury;

d. Dr. McNulty's IME Report notes that the knee could be disabling, but that there is no treatment recommended for the right leg and Plaintiff was released to return to work from that injury and did return to work;

e. Stacie Nunez's report noted Dr. McNulty's opinion that Plaintiff could return to work with no physical restrictions related to the accident in suit;

f. Dr. McNulty's Conference with Stacie Nunez noted his opinion that Plaintiff could return to work without any restrictions related to the accident in suit;

(2) the necessity of medical care recommended by Plaintiff's physicians, and medical causation of that treatment;

a. Dr. McNulty's IME Report notes his opinion that the right leg care up to the date of records considered by Dr. McNulty was appropriate;

b. Dr. McNulty's IME Report notes his opinion that the right knee treatment recommended by Dr. Duplantier is not related to the accident in suit;

c. Dr. McNulty's IME Report notes that he does not believe that Plaintiff required any further medical treatment related to the accident by April 2026, when MMI was reached;

d. Stacie Nunez's Report expressed Dr. McNulty's opinion that all of Plaintiff's complaints at the time of his examination were not related to the accident in suit;

e. Dr. McNulty's Conference with Stacie Nunez noted his opinion that he did not relate Plaintiff's symptoms at the time of his evaluation to the accident in suit;

f. Dr. McNulty's Conference with Stacie Nunez noted his opinion that Plaintiff may require knee surgery or hardware removal, but that treatment would not be related to the accident in suit, and that he did not recommend any medication, diagnostic studies, surgeries, injections, physical therapy, or acupuncture;

(3) the opinions of Drs. Lonseth and Duplantier[3];

a. Dr. McNulty's IME Report noted his position on:

i. the past medical treatment of the right leg;

ii. the lack of medical causation of the right knee injury and the relatedness of the right leg injury;

iii. his opinion that the medical care of the right leg through March 31, 2026 was appropriate;

iv. that Plaintiff reached MMI by April 2026, when no further medical treatment related to the accident would be required;

b. Stacie Nunez's Report expressed Dr. McNulty's opinion that all of Plaintiff's complaints at the time of his examination were not related to the accident in suit;

[3] Plaintiff asks the Court to determine that Dr. McNulty has not opined on these doctors' opinions, but fails to explain to the Court what their opinions are.

c. Stacie Nunez's report noted Dr. McNulty's opinion that Plaintiff could return to work with no physical restrictions related to the accident in suit;

d. Stacie Nunez's Report expressed Dr. McNulty's opinion that Plaintiff did not require any further medical treatment related to the accident in suit;

e. Dr. McNulty's Conference with Stacie Nunez noted his opinion that Plaintiff may require knee surgery or hardware removal, but that treatment would not be related to the accident in suit, that any knee condition is not related to the accident in suit, and that he does not recommend any medication, diagnostic studies, surgeries, injections, physical therapy, or acupuncture;

Thus, while the relief requested by Plaintiff here is premature without the Court having the benefit of the details of Dr. McNulty's complex expert medical testimony, it is evident that Dr. McNulty has adequately expressed the opinions that Plaintiff claims have not been stated.

With respect to Plaintiff's request that Dr. McNulty not be allowed to consider, and render opinions, on his ongoing medical care, as Plaintiff will assuredly expect his own experts to do so, this is without merit.

To the extent that Plaintiff's medical care has continued beyond the date of records available to Dr. McNulty at the time he rendered an opinion, McNulty should be allowed to consider the subsequent treatment records and supplement his opinion as the medical condition develops. *Semere v. Ethicon, Inc.*, 20-1400, 2021 U.S. Dist. LEXIS 189338, *6-7, (W.D. La. Sept. 30, 2021); Fed.R.Civ.P. 26(e)(2); Fed.R.Civ.P. 26(a)(3)(B). After all, Plaintiff remains under the care of multiple physicians, Drs. Lonseth and Duplantier, and has been recommended for more than one medical procedure, a knee surgery[4] and a hardware removal surgery, neither of which has

[4] The relatedness of which is disputed by Dr. Barton Wax, plaintiff's treating physician from April 5, 2025 through August 4, 2025, and IME Physician, Dr. Michael McNulty.

occurred, with the direction of his treatment not clear and his future prognosis unknown to anyone, until Plaintiff decides on a course of treatment and pursues it.

### A. The Inadvertent Failure to Disclose the Summary of Dr. McNulty and Nunez Conference

Defendant discovered today that the Summary Sheet of the conference with Dr. McNulty and Nunez was not produced to Plaintiff with the other expert disclosure materials on August 10. This was not intentional as Defendants paid the experts to obtain the opinions stated in the Summary Sheet for use in the case. The Summary Sheet was believed to be appended to the Nunez Report, which refers to Summary Sheet, but was a separate document, and was inadvertently produced on August 25. .

In the event that Plaintiff objects to the untimely disclosure of the record, Defendant briefly addresses the issue.

When a party discloses expert opinions after the court's scheduling order deadline, the court has the discretion to exclude the opinion and proposed testimony of the expert. *Geiserman v. MacDonald*, 893 F.2d 787, 790-91 (5th Cir. 1990). This discretion is based in the court's authority under Federal Rule of Civil Procedure 16 "to preserve the integrity and purpose of the pretrial order." *Id. (quoting Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979). Under *Geiserman*, the court should consider the following factors before excluding evidence as untimely: (1) the party's explanation for its failure to produce the evidence; (2) the importance of the proposed evidence; (3) the potential prejudice in admitting the proposed evidence; and (4) the availability of a continuance to cure this prejudice. *In re Pool Prods. Distrib. Market Antitrst Liti*g., 2014 U.S. Dist. LEXIS 117324, 2014 WL 4186770, at *2 (citing *Geiserman* at 791).

The failure to produce the Summary Sheet was not intentional and resulted from error of counsel, addressed above, which should not result in prejudice to Defendants, who incurred costs to obtain the Summary Sheet for its production in this case..

The evidence is very important, as it contains the expert opinions of Defendants' IME physician on future care and Plaintiff's medical condition, which are relied on by other experts, including vocation rehabilitation counselor, Stacie Nunez.

The potential prejudice to Plaintiff is slight, as the opinions contained in the document were restated by Nunez in her timely produced report and attributed to Dr. McNulty, so there is no surprise. *See Report of Stacie Nunez, p. 5, Ex. "B".* Further, the document has been produced within 15 days of the Defendants' report deadline, and Defendant is amenable to any reasonable extension of time needed by Plaintiff because of the late disclosure.

Finally, Defendants have sought continuance of trial, which would cure any prejudice resulting to Plaintiff, should it exist.

Thus, under these circumstances, Defendants respectfully request that the Summary Sheet be considered by the Court and allowed for use by Defendants' experts to state the opinions therein.

**WHEREFORE** Defendants, CP Marine Services, LLC and Ten Mile Exchange, LLC respectfully pray that Plaintiffs' Motion in Limine, Rec. Doc. 45, be denied.

Respectfully submitted,

/s/ *Paul D. Hale*_______________________
**PAUL D. HALE (Bar No. 30539)**
**KARI M. ROSAMOND (Bar No. 34065)**
**HALE DEVALL, LLC.**
400 Poydras Street, Suite 2107
New Orleans, LA 70130
Telephone: (504) 576-0700
Facsimile: (504) 383-0932
phale@haledevall.com
krosamond@haledevall.com

**Attorneys for CP Marine, LLC and Ten Mile Exchange, LLC**