**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN FERRIER**<br><br>**v.**<br><br>**CP MARINE SERVICES, LLC and TEN MILE EXCHANGE, LLC** | **CIVIL ACTION NO. 25-2286 c/w 26-1694**<br><br>**Ref.: 26-1694**<br><br>**JUDGE JAY C. ZAINEY**<br><br>**MAGISTRATE JUDGE KAREN WELLS ROBY** |

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT**

MAY IT PLEASE THE COURT:

Claimants, CP Marine Services, LLC ("CP Marine"), and Ten Mile Exchange, LLC ("Ten Mile"), (collectively "CP Marine/Ten Mile"), respectfully file this Memorandum in Reply to the arguments of the Plaintiff in related case, No. 25-2286, Jonathan Ferrier ("Ferrier"), put forth in Opposition (Rec. Doc. 57) to Defendants' Motion for Leave to File Third Party Complaint against Natalie Jean Marine, LLC ("Natalie Jean"), in the Limitation Action, No. 26-1694, Rec. Doc. 56.

Ferrier is not a party to the Limitation Action, No. 26-1694, and lacks standing to object to the joinder of parties in a case in which he is not a party and has asserted no interest. Even doing so now would be fruitless, as there has been no timely Opposition to the Motion for Leave by any actual party.

Further, Plaintiff's argument disregards the rights provided by Congress under the Limitation of Liability Act to vessel owners, such as T&M Holdings, LLC (T&M), and Judge Zainey's management of his case docket. There is no Scheduling Order in the Limitation Action, the deadline for joining parties has not expired (or been set), and the Limitation Action has not yet been consolidated with Ferrier's case for trial. In fact, consolidating the matters at the current trial

setting is impossible, as the monition period is after the current trial date, all claims against T&M are stayed until that date, and moving the monition period would make compliance with Rule F impossible for T&M and would disregard the rights of all other claimants not yet appearing in favor of Ferrier's own self interests.

Finally, Ferrier's argument that Defendants failed to timely depose Kraly is nonsense. The new party that Ferrier added to the case at the amendment to pleading deadline, T&M, appeared in the case on June 15[1]. After T&M appeared, by July 8 several depositions were requested, including Kraly. *See Rec. Doc. 55-3*. Kraly's deposition was scheduled on the date requested by Kraly, July 22, and moved to August 7 at Kraly's request, with Ferrier's counsel facilitating the scheduling of this witness who he was speaking with on the phone and dining with at a steakhouse. *See Rec. Doc. 56-5; 56-8*. After waiting for all parties to appear before conducting discovery and then cooperating with the requests of Ferrier and his witness, Ferrier now claims this professionalism amounts to laziness by Defendants.

Plaintiff's final desperate argument that Defendants should have long been aware that he hurt his right knee while employed with Natalie Jean Marine with sufficient evidence to bring claims against that company being apparent for many months is without merit. Plaintiff acknowledges in another pleading that Defendants did not learn of Dr. McNulty's opinion until July 31, not May 20 as he disingenuously claims in his brief. *See, Rec. Doc. 45-1, p. 4, Section B*. Mr. Dardar's denial that Ferrier ever reported right knee symptoms during his employment by CP Marine, and Dardar's speculation that the knee could have been injured anywhere, including with his subsequent employer, Natalie Jean Marine, was made to prove a point that the presence of a

---

[1] Plaintiff deposed Joseph Dardar, a member of Defendants and T&M Holdings, LLC on May 19 after suing T&M but before it made an appearance. However, as is customary, Defendants waited for all parties to appear before conducting discovery as a courtesy to the litigant and their counsel.

current knee problem does not prove CP Marine's liability for that condition. Speculation does not give rise to liability. Rather, the recently discovered evidence does:

On August 7, Kraly testified that when he hired Ferrier on or about September 30, 2025, Ferrier appeared to Kraly, a layman, to be healthy and without physical limitations. Kraly testified further, that Ferrier told him he was medically recovered and capable of working as a deckhand, and that Kraly had a medical professional evaluate Ferrier who agreed he was without any medical condition on September 30, 2025, including a right knee problem. Thereafter, Kraly observed no physical problems for about one month, when Kraly, who is not a human factors expert, a doctor, or a physical therapist, noticed an obvious change in Ferrier's physical capabilities, which Ferrier told Kraly was the result of different injuries described as, "multiple pain", including his old leg injury:

> Q. This man is coming to work for your company. I've got your testimony about ensuring that they're safe and not disabled. Did you look at him walk?
> A. I probably did, and I didn't really detect a limp initially until probably, maybe, a month after he worked for us –
> Q. Okay.
> A. --was working for us at the shipyard.
> Q. All right. Tell me what you saw one month in.
> A. I noticed a slight limp towards the end of the day, and I noticed his lack of agility. And I would ask him what his pain level, 1 to 10. And it always seemed to be between 8 and 10.
> Q. Okay. When you say you asked him his pain level, did you think he had a headache?
> A. He told me he had multiple pain.

*Deposition of Kraly, 47:5-48:22, Ex "A".*

Importantly, Kraly does not deny that Ferrier may have been involved in a workplace accident with Natalie Jean Marine resulting in injury to Ferrier, only that he does not recall any:

> Q. Sure. Did anybody report any accidents of Mr. Ferrier after you employed him as a deckhand on September 30, 2025?

In other words, during that second stint of employment, did anybody report any accidents that he had?
A. No, not that I recall.

*Deposition of Kraly, 111:6-11, Ex "A".* Kraly also admits that he never asked Ferrier whether he was injured during his employment with Natalie Jean Marine. *Id. at 128:7-10.*

Kraly only observed Ferrier having physical difficulty after he was employed for one month, and what Kraly observed was consistent with someone with a knee injury trying to ambulate:

Q. Okay. And it's true, based on your testimony here, that you're not aware of any limitations or difficulties doing his job at least in the first month that he was employed by you the second time on September 30, '25?

MR. BOLOGNA:
Object to the form.

A. I didn't really observe any issues with him egressing or getting on and off the vessel. It's -- I believe it was just about a month afterwards -- after he was working that I did notice a slight limp and lack of agility in his flexibility to be able to traverse on the vessel because I have similar limitations with my right hip and the knee surgeries. So I'm aware of what I do to compensate for, and I believe I seen Jonathan doing the same.

*Deposition of Kraly, 111:12-112:6, Ex "A"; see also, Deposition of Kraly, 112:8-25,* (So I noticed that he had a slight difficulty….on stepping over the grating and similar to what I have difficulty with stepping over grating because of my lack of mobility and agility due to my hip and numerous knee surgeries), Ex. "A".

Kraly could not tell what body part of Ferrier was causing his problems. *See Deposition of Kraly, 113:1-3, Ex. "A".* However, Kraly concedes that Ferrier DID report knee pain during his employment with Natalie Jean Marine, that was different than the leg pain sustained in the April 2025 accident. *See Deposition of Kraly, 124:22-125:19, Ex. "A".*

The Kraly timeline of symptoms presenting one month into Ferrier's employment that began between September 30 and October 1, makes the new symptoms Kraly observed manifest between October 30 and November 1, and it is not disputed that Ferrier first reported right knee symptoms to a medical provider on November 4, specifically to Dr. Duplantier. *See Rec. Doc. 56-3*. Thus, the temporal connection between these events cannot be ignored and it cannot be denied that Defendants learned of this connection on August 7, and the only reason Kraly was deposed on that date and not sooner was because Plaintiff sued a new party and then Plaintiff requested Kraly's earlier agreed to deposition date be moved to August 7.

Thus, Defendants deposed Kraly promptly after all parties appeared, and Kraly provided new evidence that was previously only known by Plaintiff, who did not disclose it to Defendants but instead made claims inconsistent therewith, when he alleged injury to the right knee in the April 2025 accident. *Rec. Doc. 56-4*. Defendants met Plaintiff's demands, in part, and have paid maintenance and cure related to that right knee injury and should be entitled to pursue recovery thereof from the liable party, Natalie Jean Marine.

Further, proving the circumstances of how that right knee injury came to arise, and other details of Ferrier's work with Natalie Jean Marine, such as depositions of co-workers identified for the first time by Kraly on August 7, are critical to Defendants' defense, and Plaintiff's desire to avoid that potentially troubling evidence is telling.

Furthermore, continued discovery has provided further support for the Third-Party Complaint against Natalie Jean Marine. On August 10, additional evidence was discovered supporting this claim, when Fred Eitmann, PT, Ferrier's treating physical therapist, testified that Plaintiff never reported any right knee symptoms during his treatment of Ferrier, that Eitmann supervised Plaintiff successfully performing various strenuous exercises that would have caused

knee symptoms to manifest, that Eitmann would not have recommended those exercises if knee symptoms were present, and that the Ferrier had no difficulty completing the exercises. *See Deposition of Eitmann, 77:12-87:5; 94:8-95:8; 183:1-184:14, Ex. "B".*

On August 14, Defendants moved for leave to bring the Third-Party Complaint.

On August 20, additional evidence was discovered supporting the Third-Party claim, when completely contrary to the claims of Ferrier, Dr. Barton Wax, his own treating physician, testified that Ferrier did not sustain any right knee injury in the April 2025 accident in suit and did not sustain any other knee injury through August 4, 2025, as Ferrier did not have a right knee injury at any time[2].

Thus, the Third-Party Complaint against Natalie Jean Marine is based on far more than a limp getting worse, as Plaintiff would lead the Court to believe. It is based on incontrovertible medical evidence of Ferrier's treating physicians that Ferrier **DID NOT SUSTAIN A RIGHT KNEE INJURY IN THE APRIL 2025 ACCIDENT IN SUIT**, and corroborating evidence suggesting that the right knee injury manifested during Ferrier's employment as a seaman with Natalie Jean Marine, coupled with Defendants satisfying certain demands of Plaintiff related to that injury.

WHEREFORE, Claimants, CP Marine, LLC and Ten Mile Exchange, LLC, for the reasons set forth above, respectfully request leave of Court to file the Third-Party Complaint against Natalie Jean Marine, LLC.

---

[2] Dr. Wax's deposition transcript is still unavailable after the dispositive motion and *Daubert* motion deadline, demonstrating the chaotic, rushed, and compressed discovery timeline demanded by Plaintiff in a desperate attempt to maintain the trial date. Other depositions requested that were not scheduled were due to the impossibility of Plaintiff's ambitious discovery plan considering the prior commitments of other counsel and case deadlines, not because the depositions were unimportant.

Respectfully submitted,

*/s/ Kari M. Rosamond*

Paul D. Hale (La. Bar No. 30539)
Kari M. Rosamond (La. Bar No. 34065)
**HALE DEVALL, LLC**
400 Poydras Street, Suite 2107
New Orleans, LA 70130
Telephone: (504)576-0700
Facsimile: (504) 383-0932
Email: phale@haledevall.com
krosamond@haledevall.com

***Attorneys for CP Marine, LLC and Ten Mile Exchange, LLC***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of August 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*/s/ Kari M. Rosamond*
Kari M. Rosamond