**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN FERRIER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 2:25-cv-2286** |
| **CP MARINE SERVICES LLC ET. AL** | **SECTION: "A" (4)** |

**ORDER & REASONS**

Before the Court is a **Motion to Compel (R. Doc. 83)** filed by the Plaintiff, Jonathan Ferrier, seeking an Order from this Court compelling disclosure of the statements of Haleigh Dardar, Jason Schouest, and Joseph Dardar. The Motion is opposed. R. Doc. 91. A reply memorandum was filed by the Defendants. R. Doc. 95. The motion was heard by oral argument on September 30, 2026.

## I. Background

### A) Factual Background

On April 5, 2025, Plaintiff Jonathan Ferrier ("Plaintiff" or "Ferrier") sustained a lower leg fracture while unmooring the M/V DOUGLAS as part of his employment with Defendant CP Marine Services, LLC ("CP Marine"). Ferrier underwent two surgeries, had a good recovery, never reported any problems or negative symptoms during physical therapy, and was released to work full duty by his surgeon, Dr. Barton Wax, on August 4, 2025. *See* R. Doc. 42-4 (Jefferson Orthopedic Clinic Records August 4, 2025). Plaintiff returned to employment with CP Marine, but his employment was subsequently terminated.

Thereafter, Plaintiff sought employment with one of his former employers, Natalie Jean Marine, LLC ("Natalie Jean Marine"), on or about September 30, 2025. A workers' compensation claim arising from the April 5, 2025, incident has been open since April of 2025. *See* R. Doc. 83-5.

On November 7, 2025, Ferrier filed this civil action against CP Marine, Ten Mile Exchange, LLC ("Ten Mile"), and T&M Holdings, LLC ("T&M Holdings"). R. Doc. 1. Ferrier demanded payment of maintenance and cure benefits based on his medical treatment.

**B) <u>Subject Motion to Compel</u>**

The dispute underlying the instant motion began on August 10, 2026, when Defendants produced expert reports which included a list of expert reliance materials, including the "Affidavit of Truth of Haleigh Dardar" and the "Statement of Joseph Dardar." *See* R. Doc. 30 (Defendants' Witness and Exhibit List); *see also* R. Doc. 47-9 (Defense expert Mr. Marc Fazioli's List of Reviewed Materials and Expert Report). Plaintiff contends that his counsel immediately requested production of these statements, including the statement of Jason Schouest, which Plaintiff contends were all contemplated by his discovery requests but were not identified or produced by Defendants. R. Doc. 83-1 at 2-3; R. Doc. 83-3 at 8 (Emails between Plaintiff and Defense counsel regarding disputed documents). On August 11, 2026, Defendants provided the Affidavit of Truth of Haleigh Dardar. *Id.* at 7.

On August 27, 2026, Plaintiff contends that Defendants provided supplemental discovery responses and simultaneously withdrew the three statements because they were allegedly communications to Defense Counsel. *Id.* Defendants produced a privilege log which claimed protection under the attorney-client privilege. *See* R. Doc. 83-4 (Defendants' Privilege Log).

On August 28 and 29, 2026, the parties communicated and Plaintiff made known its intention to file the instant motion. *Id.* at 2-3. Defendants requested to "claw back" the produced affidavit on the alleged grounds that it was produced inadvertently. *Id.* at 2. On August 31, 2026, Defendants produced a supplemented privilege log with more detailed entries for each of the three statements. R. Doc. 83-6 (Defendants' Supplemented Privilege Log).

On September 2, 2026, Defendants produced a Second Amended Privilege Log in which they updated the privilege entries for the three disputed statements to claim protection under the work-product doctrine for the first time. *See* R. Doc. 91-1.

On September 2, 2026, Plaintiff filed the instant Motion to Compel. R. Doc. 83. Plaintiff contends that the Defendants' original and supplemented privilege logs were inadequate to support a claim of privilege and conveyed simply a description of the document and blanket designation of privilege. Plaintiff contends that the first two privilege logs claimed only attorney-client communication as the basis for protection, whereas the amended privilege log produced after Plaintiff expressed intent to file this motion invoked the work-product doctrine for the first time. Also, Plaintiff points out that the statements were identified on the Defendants' list of documents reviewed by defense expert Mr. Marc Fazioli in forming his expert report.

On September 15, 2026, Defendants filed their opposition to the instant motion. R. Doc. 91. Defendants contend that the subject motion should be denied because the three statements were created with the purpose of assisting with its counsel's legal defense. They contend that the statements were not created or maintained as ordinary business. Although not originally identified as work product, the Defendants claim work product protection and inadvertent disclosure which seemed to coincide with the enrollment of new counsel. Counsel also argues that defense expert Mr. Fazioli did not in and of itself waive privilege where he did not consider the statements within his analysis and resulting opinion.

## II. <u>Standard of Review</u>

### A) Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure provides that unless otherwise limited by the court, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case," considering factors such as the parties' access to the information and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).

However, the court must limit discovery if it determines that the discovery is duplicative. FED. R. CIV. P. 26(b)(2)(C). Also, discovery may be limited if it can be obtained from some other more convenient source, or if the proposed discovery is outside the scope of Rule 26(b)(1). *Id.*

**B) Privileged Information**

Rule 26 protects against the discovery of privileged information. *See* FED. R. CIV. P. 26(b)(1). A party who invokes a privilege in response to a discovery request has the burden of proving the privilege's applicability. *Meador v. Starr Indem. & Liab. Co.*, No. 19-2378, 2020 WL 8256370, at *3 (E.D. La. Sept. 1, 2020) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).

**i) Work-Product Doctrine**

The work-product doctrine provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . . or agent)." FED. R. CIV. P. 26(b)(3)(A). For documents or things to be considered work product, litigation is not required to be imminent "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *U.S. v. Davies*, 636 F.2d 1028, 1040 (5th Cir. 1981), *cert. denied*, 454 U.S. 862 (1981).

The factors considered to determine the primary purpose for creating a document are "the retention of counsel and his involvement in the generation of the document." *Canter v. Cleco Corp.*, No. 08-0343, 2009 WL 902435, at *3 (E.D. La. Mar. 30, 2009) (internal citations omitted).

Also, the court should consider "whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Id.*

Materials prepared in the ordinary course of business are not considered to be prepared in anticipation of litigation. Therefore, such materials are excluded from the work-product doctrine. *Meador*, 2020 WL 8256370, at *4 (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982); additional citation omitted).

The involvement of an attorney is not dispositive, but it "is a highly relevant factor . . . making materials more likely to have been prepared in anticipation of litigation." *Fieldwood Energy, L.L.C. v. Diamond Servs. Corp.*, No. 14-650, 2015 WL 1415501, at *2 (E.D. La. Mar. 27, 2015) (quoting *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000)).

**ii) Attorney-Client Privilege**

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). It shields from disclosure confidential communication between an attorney and client. *See id.* The purpose of the attorney–client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* In federal question cases such as this one, federal common law determines the scope of the attorney–client privilege. *See In re EEOC*, 207 Fed.Appx. 426, 431 (5th Cir. 2006).

Where, as here, the existence of a federal question provides the basis for federal subject matter jurisdiction, federal common law governs the resolution of the privilege issue. *See United States v. Zolin,* 491 U.S. 554, 562 (1989) (citing FED. R. EVID. 501). Under federal common law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made to a

lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. *See United States v. Robinson*, 121 F.3d 971, 974 (5th Cir.1997), *cert. denied*, 522 U.S. 1065 (1998). The burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. Mar. 29, 2004) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985)).

A general allegation of privilege is insufficient to meet this burden. *Id.* Instead, "a clear showing must be made which sets forth the items or categories objected to and the reason for that objection." *Id.* (quoting *Caruso v. Coleman Co.*, No. 93–CV–6733, 1995 WL 384602, at *1 (E.D. Pa. Jun.22, 1995). The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. *Id.*

Although a privilege log and an in-camera review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Id.* at 473–74 (quoting *Pippenger v. Gruppe*, 883 F.Supp. 1201, 1212 (S.D. Ind. 1994)). In fact, "resort to in camera review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible." *Id.* at 474 (quoting *Caruso*, 1995 WL 384602, at *1 (emphasis in original)).

## III. Analysis

Plaintiff seeks the production of statements from Haleigh Dardar and Joseph Dardar according to FED. R. CIV. P. 26 (b)(4)(C)(2). R. Doc. 83. Regarding Jason Schouest, the Plaintiff contends that the statements were improperly withheld by the Defendants' questionable privilege log. *Id.* Plaintiff contends that his requests for production contemplated production of the

statements. *Id.* Plaintiff contends that when this issue was raised, Defendants acknowledged that the statements were produced but then later sought to claw them back. *Id.*

Defendants contend that the statements were both inadvertently identified to Plaintiff's counsel and released to Defendants' own expert witness, Mr. Marc Fazioli. R. Doc. 91. Defendants contend that disclosing the statements to their expert did not waive privilege because Mr. Fazioli did not "consider" the three statements in his analysis. *Id*. Defendants also point out that before the Plaintiff filed the subject motion, the Defendants produced a Second Amended Privilege Log allegedly curing the problem of asserting the attorney-client privilege rather than the work-product doctrine. *Id.*

The work-product doctrine is very different from the attorney-client privilege regarding possible waiver. Although the attorney-client privilege exists to protect the confidential communications between an attorney and client and, thus, is generally waived by disclosure of confidential communications to third parties, the work-product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co*., 864 F.2d 379, 382 (5th Cir. 1989) (citation omitted). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* (citation omitted). That is, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir.2000).

However, such a "disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp*., 619 F.3d 373, 378 (5th Cir. 2010) (internal quotation marks and citation omitted). And, for

example, "the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered." *Shields*, 864 F.2d at 382.

"Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. Oct. 16, 2006); accord *Ecuadorian Plaintiffs*, 619 F.3d at 379 & n.10 (party asserting work-product protection is not required to prove non-waiver). "If the party is successful, waiver of work product immunity will be limited to the materials actually disclosed." *Brady*, 238 F.R.D. at 444.

The evidence shows that the statements of Haleigh Dardar and Joseph Dardar were not made in anticipation of litigation but in the ordinary course of business. Counsel acknowledged that she produced the statement of Haleigh Dardar and that it was not obvious to her that the records were privileged when she took over the file in June 2026.

Neither Haleigh Dardar nor Joseph Dardar prepared their statements at the request of Counsel but instead recorded their statements to memorialize what they heard and/or observed regarding the events underlying Plaintiff's claims. Specifically regarding the statement of Haleigh Dardar, Counsel acknowledged that she submitted an affidavit which was prepared by her but signed by Ms. Dardar. Further, Defense Counsel admitted that she claimed only the attorney-client privilege on the first privilege log, and that the work-product doctrine was not raised until a later iteration of the privilege log was produced.

Also, Counsel acknowledged that the documents were voluntarily provided to their expert and only when he was later contacted did he suggest that he did not "consider" the statements in his expert report. Given that the statements were not protected by the attorney client privilege, the Court considered whether they would be protected by the work product doctrine.

Counsel also argues that the work product doctrine applies even before the lawyer is retained, as in this case where the lawyer was not retained until one week after the three witness statements were created. Here, Plaintiff's demand letter was sent on October 8, 2026, and Defendant CP Marine secured counsel only one week later. However, the Court notes that it is a common practice of the Defendant to conduct an accident investigation, including taking statements after the accident regarding Plaintiff's return to work and his termination. The Court notes that on July 26, 2026, Defendants gave the statements to their expert, Mr. Fazioli, which constituted a waiver. Mr. Fazioli's report was later issued identifying the statements on August 22, 2026. The Court therefore also denies the request to claw back the Dardar statements.

Regarding the statement of Jason Schouest, like the other statements, Schouest's statement was made prior to the retention of counsel regarding his observations whether heard or personally felt. The Court finds that Jason Schouest's statement is subject to production because it is not protected by either the attorney-client privilege nor the work-product doctrine.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion to Compel (R. Doc. 83)** is **GRANTED .**

**IT IS FURTHER ORDERED** that the Defendants shall produce the statements of Haleigh Dardar, Joseph Dardar, and Jason Schouest no later than 14 days from the signing of this Order.

New Orleans, Louisiana, this 10th day of November 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**